THE STATE v. B. H. CRAFT, Appellant.—126 S. W. (2d) 177.

Division Two, March 15, 1939.

270

H. D. Green, Homer Rinehart and Gordon P. Dorris for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted on a charge of obtaining money by false pretenses and sentenced to imprisonment in the penitentiary for a term of three years. He appealed. The case originated in Howell County, Missouri. On a change of venue the case was transferred to Oregon County where it was tried on March 16, 1938. The substance of the charge was that appellant and J. R. King, through false pretenses, obtained checks totalling $59.94 from J. C. Cooper and Allie Cooper, which checks were cashed at a bank in West Plains, Missouri. The alleged false pretenses were, that appellant represented himself to be a doctor of medicine, and J. R. King an optometrist and eye specialist; that they, on the strength of such representations, were permitted to examine the eyes of J. C. Cooper, Allie Cooper and their son; that J. C. Cooper and Allie Cooper were induced to buy three pairs of spectacles for themselves and

their son, which were to be delivered within a few days. The proof disclosed that appellant and King were accompanied by Threlkeld, an ex-sheriff of Howell County; that Threlkeld introduced King and appellant to the Coopers as "doctors and eye specialists." The evidence disclosed beyond doubt that King posed as an eye specialist and that he, King, made false representations as charged in the information. It was conceded that neither appellant or King had a license to practice medicine or optometry. To fully understand the trial theory we will now state appellant's position and theory of the case. Threlkeld testified for appellant. He denied that he introduced appellant as "doctor," or that appellant at any time in his presence represented himself to the Coopers or anyone else as a doctor. Threlkeld testified that he accompanied these men on an errand of his own. Appellant testified that he had driven a car for a Dr. Bateman, an optometrist, for a period of four years; that he acted as a flunky for Dr. Bateman carrying his medicine case and generally helping him in his work; that Dr. Bateman during these years traveled extensively through south Missouri. Appellant further testified that after Dr. Bateman quit that territory King, whom he had met on one occasion, appeared upon the scene; that he acted for King in the same capacity as he had for Dr. Bateman; that he honestly believed at the time that King was an eye specialist. He testified that King left owing him $35, that he cashed the checks given in payment of glasses, but delivered all of the money to King; that he did not receive one cent of the money that was paid by the people who were defrauded. Appellant emphatically denied that he at any time represented himself to the Coopers or anyone else as a doctor.

The State introduced substantial evidence tending to prove that appellant stated to a number of persons, that he was a doctor and had been practicing medicine in Springfield; that Dr. King had treated eyes and fitted glasses for many of his, Craft's patients and had always given satisfaction; that he, appellant, and King had rented rooms at West Plains and were going to locate there; that if the glasses they had sold were not satisfactory they would make adjustments. The Coopers testified that they relied upon the representations made and paid appellant and King $59.94 for three pairs of glasses which were never delivered. The State introduced evidence that appellant and King sold spectacles to others in the neighborhood on that same day and under like circumstances. B. H. Hardcastle and his wife testified for the State that they bought spectacles from appellant and King and paid for them; that they were given a receipt signed by appellant as "Dr. B. H. Craft, 456 Market Street, Springfield, Missouri." This receipt was introduced in evidence. The checks given were made payable to Craft. Appellant was asked if he had signed the receipts as "doctor" and he answered as follows: "I signed the 'B. H. Craft.' " He was further questioned as follows: "Q. Was

the 'doctor' there, did you put that part on there?'' A. That don't look like my handwriting to me, it may be.'' Appellant took the position that he was an innocent victim of circumstances; that he honestly believed King was an eye specialist; that he aided him in his work as he had Dr. Bateman; that he had no intention of leading anyone to believe that he was a doctor, and did not inform anyone to that effect. The State was permitted, over appellant's objection, to introduce evidence of other sales made on the same day as the purported sale to the Coopers.

Appellant briefed three points upon which he relies for a reversal of the judgment of conviction. In the first point briefed appellant assailed the principal instruction given for the State. It is asserted the instruction assumed that false statements were made by appellant and that such statements were untrue; that it also assumed that J. C. Cooper was induced to give checks and was defrauded. We cannot agree with this contention. The instruction commenced with the statement.

''. . . if you find and believe from all the facts and circumstances introduced in evidence in the case, beyond a reasonable doubt, that. . . .''

This was followed by a recitation of what the appellant was alleged to have said and done, ending with the statement ''if you so find.'' The instruction covers six pages of appellant's brief. We do not find where any fact in dispute was assumed. The instruction at various points repeated the phrases ''if you so find'' and ''if you find he so represented.'' The instruction specifically required the jury to find, before authorizing a conviction, that the statements made were untrue; that appellant knew them to be untrue at the time; that the Cooper's were deceived thereby and were induced to part with their money on the strength of the false representations. Note the following taken from the instruction: ''and if you further find that the said J. C. Cooper and Allie Cooper, believing said false pretenses, if any, so made as aforesaid, to be true and being deceived thereby and relying thereon. . . .''

It is evident that the instruction is not subject to the criticism made, that it assumed any disputed facts. Again it is asserted that the instruction contained the following, which was not supported by any evidence: ''that he, the said B. H. Craft, as such physician and doctor of medicine was then and there fitted and qualified to treat the human eye and thereby relieve pain and suffering of same and thereby preserve the sight of same, . . .''

Evidence to justify the above was introduced. It showed that Threlkeld referred to appellant as a doctor when they first met the Coopers. The receipt given to the Hardcastles was signed by appellant as ''doctor.'' Mrs. J. C. Cooper testified as follows:

"Q. He said—he says, 'I have been practicing medicine in Springfield, but' he says,—Doctor Craft says—'we are making preparations now to move to West Plains, we have rented a house next to Doctor Amys, which will make it very handy, and' he says, 'I will be there as a doctor and Doctor King as an eye specialist, and Doctor Amys if you want a tooth pulled.'"

It is contended that the above statement was made after the sale. But note what occurred when King was pretentiously examining the witness's eyes:

"A. Well, Doctor King,—he was examining my eyes at this special time, he looked up at Craft and says, 'Doctor,' says 'haven't I treated lots of your patient and always given satisfaction in fitting glasses?' Doctor Craft says, 'You sure have.'"

That sufficiently answers appellant's contention.

■ Another assault upon the instruction is, that it authorized a conviction of appellant if the jury found that he made all, or any one of the alleged false statements enumerated in the instruction. It is asserted that the instruction authorized a conviction of appellant if the jury found that appellant made the promise that the glasses would be delivered in a few days; that this was a mere promise to do something in the future and therefore, even if falsely made, was not sufficient to sustain a conviction. Appellant's statement of the law is correct, but he is in error as to the meaning of the instruction. The instruction does say, that if the Coopers were induced by false pretenses, as enumerated in the instruction, to buy glasses which were to be delivered in a few days then appellant was guilty. However, the promise to deliver the glasses in a few days was not enumerated in the instruction as one of the alleged false pretenses. In other words, the gist of the instruction, insofar as concerns this point, is, "that if the jury found and believed that the Cooper's were defrauded by being induced to purchase and pay for glasses to be delivered in a few days by the appellant, and to affect said fraud the appellant and one King did then and there falsely represent, etc." The instruction then enumerated the alleged false pretenses without reference to the promise that the glasses were to be delivered in the future. The promise that the glasses were to be delivered was the consideration for the money obtained. The false representations consisted of the pretense that appellant and King were doctors. The instruction properly submitted the question to the jury. This disposes of all the points briefed with reference to the instructions.

■ Appellant insists that the trial court erred in permitting the State to introduce evidence of other similar transactions. The general rule is that evidence of crimes, other than the one for which a defendant is on trial, may not be introduced to strengthen the State's case. There are a number of exceptions to this rule. In prosecutions on charges of obtaining property by false pretenses, evidence of sim-

ilar transactions in which the defendant on trial participated is generally admitted. 16 Corpus Juris, 597, section 1162, and numerous cases cited in the footnotes, including many from this State. In the text we find the following statement:

"Evidence of similar false representations made by defendant to the same person for the purpose of obtaining property, or to others shortly before or after the representations for which defendant is on trial, is admissible to prove either defendant's knowledge of their falsity or a guilty intent, or both. . . ."

Appellant cites a recent case by this court, State v. Garrison, 342 Mo. 453, 116 S. W. (2d) 23, as authority for his contention. That was a prosecution on a charge of grand larceny. This court, in the course of the opinion, recognized the rule that in certain cases evidence of other crimes is admissible for the purpose of showing intent or knowledge. [See, also, State v. Patterson, 271 Mo. 99, l. c. 109, 110; 196 S. W. 3, l. c. (5), and cases cited.] In the case now under consideration it is defendant's contention that he merely acted as a flunky for King, who pretended to be and who he believed to be an eye specialist; that he later found that the highest ranking King ever obtained was that of a prizefighter. It may not have been unreasonable in such circumstances for the Coopers to have drawn the conclusion, from the conduct of appellant in assisting King, that appellant claimed to be a doctor of medicine, without any intent on the part of appellant to deceive them. Appellant admitted that he treated the Coopers' eyes by dropping argarol in them, and also that he gave them some of this medicine with instructions as to its use. The Coopers, however, testified that appellant pretended to be a doctor. The intention of appellant to deceive was vital. Therefore the evidence as to his conduct and statements made to others, who were admittedly defrauded, was material to show intent on appellant's part. The receipt given to the Hardcastles, signed by appellant as "doctor," tended to shed light upon that question, as did the evidence of statements made by appellant that he and King were locating at West Plains for the purpose of practicing their profession. We hold therefore that the evidence was admissible. For recent cases from other jurisdictions upon this question see Pearce v. State (Ala.), 164 So. 114, l. c. 117 (5, 6); State v. Price (Wash.), 21 Pac. (2d) 1038, l. c. 1039 (4, 5); People v. Coffelt et al. (Cal.), 35 Pac. (2d) 374, l. c. 376 (4); State v. Stratford (Idaho), 37 Pac. (2d) 681, l. c. 684 (4) (5); People v. Harmon (Cal.), 52 Pac. (2d) 537; State v. Seidenschwarz (Wash.), 70 Pac. (2d) 780, l. c. 783 (5.)

Appellant next complains of the trial court's ruling in permitting the constable of Howell township to testify that he received a warrant for appellant's arrest on August 7, 1937, but did not make the arrest until December 2, 1937. The constable testified that he was unable to locate appellant; that he went to Springfield and

other places without success. King was still a fugitive from justice at the time appellant was tried. Appellant testified that he did not evade the officers and that he had not heard of the warrant for his arrest until he was taken in custody. His explanation of his whereabouts does not impress us as being unreasonable. However, that was for the jury's consideration. Evidence of the whereabouts of a defendant after the alleged commission of a crime is generally admissible. The defendant in such cases has the right to refute any incriminating circumstances that may be shown. [State v. Davis, 337 Mo. 404, 84 S. W. (2d) 633, l. c. 636 (2, 3) ; 16 C. J. 551, sec. 1062, p. 553, sec. 1068.] The case of State v. Freyer, 330 Mo. 62, 48 S. W. (2d) 894, l. c. 899, was cited as holding that the evidence in this case was inadmissible. In the Freyer case bloodhounds were used. The evidence disclosed that as these dogs approached the home of the defendant the defendant ran toward or behind a building, but later appeared and confronted the dogs and the officers. This court held that the evidence did not rise to the dignity of a suspicious circumstance. The opinion does not hold that the evidence was not admissible. In the case now before us the evidence disclosed that appellant had been living in Springfield, Missouri. It was there that the constable could not find him. He was arrested at his mother's home at Camden, Missouri, where appellant stated he had been for two weeks prior to his arrest. Where he was prior to that time was left uncertain by the record. The evidence upon this question may not have been of much value in determining the guilt or innocence of appellant, but that did not render it inadmissible [16 C. J. 551, sec. 1063; State v. Wilkins, 100 S. W. (2d) 889, l. c. 895 (13) ; State v. Davis, 337 Mo. 404, 84 S. W. (2d) 633, l. c. 637 (2, 5).]

We have examined the record proper and find it free from error. The judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES C., is adopted as the opinion of the court. All the judges concur.