STATE OF MISSOURI, Respondent, v. JAMES HOTSENPILLER, Appellant, No. 41541—224 S. W. (2d) 1014.

Division Two, December 12, 1949.

*Fred F. Wesner* and *Earl T. Crawford* for appellant.

*J. E. Taylor,* Attorney General, and *Robert L. Hyder,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted by a jury in the circuit court of Benton county on change of venue from Pettis county, of the crime of cheating and defrauding one Henry Cartwright of $74.80, in violation of Sec. 4694, R. S. 1939, Mo. R. S. A. by selling and delivering to him a truck load of corn accompanied by a false, forged and counterfeited scale ticket stating an overweight which, at the stipulated price of the corn per bushel, called for an overcharge in the above amount innocently paid by Cartwright. The punishment assessed was two years imprisonment in the penitentiary. The appellant did not testify or produce controverting evidence, but

stood on a peremptory instruction in the nature of a demurrer to the State's evidence. Appellant's brief on this appeal complains of: (1) the insufficiency of the State's evidence; (2) the admission of incompetent evidence; (3) error in two instructions given at the request of the State; (4) and prejudicial argument by the State's attorneys.

The prosecuting witness, Cartwright, testified that on or about November 20, 1947, he ordered a truck load of shucked ear corn from appellant at the price of $2.20 per bushel. It was delivered to him the next day by appellant's truck driver, a negro named Henry Jackson, with a scale ticket. Cartwright gave the driver his check for $491.55, the price of the corn based on the weight shown by the scale ticket. It showed the gross weight 22,010 pounds, the tare 6,370 pounds and the net weight 15,640 pounds, or 223 bushels 30 pounds at 70 pounds per bushel. When the corn was leveled off and measured in Cartwright's crib, which would hold 300 bushels, he found it was short such number of bushels as would come to $74.80 at the contract price of $2.20 per bushel, which would be 34 bushels, or 2380 pounds.

W. C. Jones operated a grain elevator at La Monte in Pettis county. He testified that on or about November 20, 1947, he sold a load of ear corn to appellant, or in his name, by telephone, and that appellant's negro truck driver, Henry Jackson, came for it. Jones said he delivered the corn to the truck driver along with a duplicate original copy of the scale ticket, which showed the gross weight 20,680 pounds, the tare 7,420 pounds, and the net weight 13,260 pounds. The difference between this net weight and the 15,640 pounds net weight shown on the ticket Cartwright received from the truck driver is 2380 pounds. The truck driver paid for the corn with a $500 bill (U. S. currency).

The negro truck driver testified that on or about November 20 or 21, 1947, he went to the La Monte elevator and got the load of corn from Jones, returning to appellant's office in Sedalia. He paid Jones cash for the corn with a $500 bill and received from Jones the change and a scale ticket, which he turned over to appellant. It was the only load of corn he had ever delivered to Cartwright from the La Monte elevator. After he got something to eat appellant gave him *a* ticket and he delivered *that* corn and *that* ticket to Cartwright at his farm, and Cartwright gave him a check. The check was dated Nov. 21, 1947. But the witness could not identify either the check or scale ticket Cartwright had produced in evidence as the ones he had handled in the transaction with Cartwright.

The latter, or Cartwright's, scale ticket in general form was like the duplicate Jones, the seller, had retained, but not exactly. For instance the Jones ticket bore a number 2689; was dated "La Monte, Mo. 11-*20*-47"; bore a caption "La Monte Elevator Co. Member Federal Warehouse System"; under the title "weights" was a list of *15*

grains and seed with the weights per bushel; and recited "Load of *ear* corn from *La Monte Elevator* to J. M. Hotsenpiller" (appellant). On the other hand, the ticket delivered by the truck driver to Cartwright bore no number; was dated 11-21-47; bore no caption; under the title "*Legal* Weights" was a list of 22 grains, *fruits* and seeds with the weight per bushel; and recited it was a "Load of corn From *Johnsons Farms* to *Jim* Hotsenpiller." And in addition the gross, tare and net weights on the two tickets were different, as already stated.

Roy Anderson testified that "last fall" [which would have been the fall of 1947, since the trial was held in July, 1948] he sold some loose corn to the negro Jackson, who had a truck with Hotsenpiller's name on it, and told Jackson to weigh it on the city scales. He followed the last truck load of corn into Sedalia. The negro did not take the corn to the city scales, but backed it into the Hotsenpiller place of business at the direction of appellant. Thirty sacks of corn were on top of the witness' loose corn in the truck and were being removed when the witness went over to the truck. Appellant left, went into a store entrance through a driveway, and disappeared. The witness went in and talked to appellant's father and a young lady. He told them he was going to take the corn to the city scales. The negro driver Jackson did so and they gave him a $916 check for the corn immediately afterward.

R. O. Sanders testified he bought a load of corn from appellant. As we understand, the negro Jackson delivered the corn and presented a city scale ticket at the gate. It showed a net weight of 13,090 pounds and was dated Dec. 23, 1947. After receiving certain information about the corn, Sanders had it weighed at Smithton on December 24, and the net weight there was 11,355 pounds, which was 1735 pounds less than the city scale weight. The witness settled with appellant's father on the lesser Smithton weight.

There appears to be no discrepancy in the State's testimony except that Jones' scale ticket was dated Nov. 20, and Cartwright's check Nov. 21, and as to the hour which Jackson delivered the corn to Cartwright. But Jackson testified it was the same corn delivered on the same day. As to the hour, Jackson said on direct examination that he delivered to appellant the scale ticket and money change received from Jones at La Monte. He said he then went to get something to eat. He was asked if "this" was in the afternoon, and he answered affirmatively, saying "I didn't get up *there* until noon." Whether the word "there" refers to La Monte or Sedalia is not clear. Being later recalled Cartwright said he thought the corn was delivered to his farm between 3 and 5 o'clock p. m. But Jones thought the truck didn't leave La Monte until about that time. We do not regard this variance as material. This is all the evidence.

1036

■ We take up first appellant's contention that the evidence was insufficient to justify a verdict against appellant beyond a reasonable doubt, as required in a criminal case. We do not agree. The only witness who could testify to the continuity ■ of events was the truck driver Jackson. He said Mr. Jones at the La Monte Elevator delivered to him a scale ticket for the corn purchased. Jackson delivered that ticket to appellant. Appellant dispatched Jackson to Cartwright with the same truck load of corn and a false scale ticket showing an excessive weight. Jackson was a fair and prompt witness. He was corroborated by Jones regarding the delivery of the corn and original ticket to him. Jones had weighed the corn and retained a duplicate ticket. He could not have been mistaken. Jackson was further corroborated by Cartwright as to the delivery to him of the corn and the false ticket. Both the true and false tickets were offered in evidence, along with the cashed check given in payment for the corn.

Neither was there a failure of proof on the shortage of the corn by volume, though it was sold and purchased by weight, and the elevator ticket showed the correct weight of the same corn that was delivered. Cartwright testified that when the corn was placed in his 300 bushel crib and leveled down it showed it was short and he measured it. It may be he arrived at the exact shortage of 34 bushels by subtracting the elevator weight from the weight shown by the false ticket. But that was a legitimate method of determining the shortage, and was corroborated by linear measurements.

■ On the admission of incompetent evidence. Appellant complains of the admission of evidence that he had committed, or attempted to commit, similar frauds on Roy Anderson and R. O. Sanders a month or so *after* the one for which he was on trial, contending that such proof is competent only as to antecedent offenses, citing State v. Palmberg, 199 Mo. 233, 239-43(3), 97 SW. 566, 568(2); State v. Amende, 338 Mo. 717, 718(1), 92 SW. (2d) 106(1); Coblentz v. State, 84 Ohio St. 235, 246(2), 95 NE. 768.

But both these Missouri decisions were rape cases, and both restricted their holding to that class of cases. On the other hand, it is and long has been the general rule that in false pretense cases evidence of attempts to commit other similar offenses either before or after the one on trial, if not too remote, is competent to prove the scienter or intent of the accused, that being an essential ingredient of the crime. 22 C. J. S. p. 1132, § 691j; 16 C. J., p. 597, § 1162; 80 A. L. R. Annotation, p. 1307, II, p. 1316-1321, IVa, b, c; State v. Myers, 82 Mo. 558, 563-4(2), 52 Am. Rep. 389; State v. Donaldson, 243 Mo. 460, 475(4), 148 SW. 79, 84(4); State v. Young, 266 Mo. 723, 734-5(8), 183 SW. 305, 308(6); State v. Craft, 344 Mo. 269, 274(4), 126 SW. (2d) 177, 179-180(6); State v. Neinaber, 347 Mo. 541, 546(3), 148 SW. (2d) 537, 540(4).

Appellant's next two assignments complain of error in the State's instructions 1 and 2. Instruction 1 is too long to set out in this opinion. Appellant's first point thereon is that the instruction *assumed* the load of corn appellant sold to Cartwright was the *same* load of corn he had purchased from the La Monte Elevator, for which appellant's driver received a certain scale ticket. This is incorrect. Quoting substantially, the instruction hypothesizes: that if you (the jury) find and believe the appellant did * * with intent to cheat and defraud Cartwright *sell to him one truck load of corn* * * ; and that appellant bought *said* corn from the La Monte Elevator.

The second assignment is that Instruction 1 *assumed* the scale ticket delivered to Cartwright representing the load of corn sold by appellant *was false, forged and counterfeit.* This assignment likewise is without merit. On that point, quoting substantially, the instruction said: if you (the jury) find that appellant bought said corn from the La Monte Elevator, and by and through his servant Henry Jackson received a scale ticket therefor showing a net weight of 13,260 pounds; if you so find, and believe that afterwards the appellant, with intent to cheat and defraud Cartwright through his agent and servant Henry Jackson, *if you so find,* delivered a false, forged and counterfeit ticket to Cartwright, as set out in the information and introduced in evidence, and that appellant knew that scale ticket was false, forged and counterfeit, and through Jackson delivered the false ticket to Cartwright with intent to defraud him; and that Cartwright did believe said false ticket to be true and relying thereon paid appellant $491.55, which was $74.80 more than was due—then they could convict.

In their written argument appellant's counsel raise for the first time the additional point that the instruction assumes the truck driver Jackson was appellant's agent and servant. We do not think so. The *if you so find* clause we have italicized above, submitted that issue to the jury along with the other issue covered thereby. And while the appellant stood on a demurrer to the evidence, no question was raised at any time during the trial on Jackson's status as the agent and servant of appellant.

Instruction 2 challenged by appellant was as follows: "The Court instructs the jury that the evidence introduced as to other transactions, if any, is submitted to your consideration for the sole purpose of shedding light (if they have that effect), upon the intent and motive of the defendant in the transaction set out in the information in this case, for which he is now on trial, and for no other purpose."

Appellant's counsel say the instruction assumes: (1) the appellant had the required criminal intent and motive to defraud Cartwright; (2) comments on the evidence; (3) erroneously states that law; (4) is misleading and confusing. We do not think so. It de-

clared the law as set out in the authorities cited in the fifth preceding paragraph, to the effect that proof of other similar offenses at about the time of the offense charged is *admissible* as evidence of the *motive or intent* of the accused in the transaction for which he was on trial. It did not say the proof was evidence of guilt. On the contrary the instruction cautioned that the evidence was admitted for the *sole* purpose of shedding light (if any) on his motive and intent in the particular transaction.

The instruction is not a model, and could have made clearer the fact that it had no application to the case unless the jury had first found appellant sold the corn to Cartwright and that the weight was short in the circumstances shown. However the instruction referred to these principal facts as ''the transaction set out in the information in this case'', and in our opinion the jury would understand they must find them before inquiring into the appellant's *intent* and motive in engaging in the transaction.

██ The last assignment complains of prejudicial closing argument of State's counsel as follows: ''this other evidence, the Sanders matter, delivering that corn down there, that is only to lead you to arriving at whether or not the defendant intended to do the thing he did in this case, that is all. I want to say this in conclusion: there isn't any evidence, any denial of it at all.'' Appellant maintains this was a prejudicial comment on the appellant's failure to take the stand and testify in the case, and violative of Sec. 4082, R. S. 1939, Mo. R. S. A. The contrary has been held a number of times: State v. Janes, 318 Mo. 525, 530(2), 1 SW. (2d) 137, 138-9(3); State v. DePriest, 288 Mo. 459, 469(3), 232 SW. 83, 86(6); State v. Myer, 259 Mo. 306, 317-8(6), 168 SW. 717, 720(5); State v. Hughes, 258 Mo. 264, 271-2(3), 167 SW. 529, 531(3); State v. Gordon, 253 Mo. 510, 517-8(3), 161 SW. 721, 723(3); State v. Ruck, 194 Mo. 416, 440(15), 92 SW. 706, 713(19).

For the reasons stated the verdict and judgment of conviction should be and are affirmed. All concur.