STATE OF MISSOURI, Defendant in Error, v. JOHN PHILLIP MEDLEY, Plaintiff in Error.

STATE OF MISSOURI, Defendant in Error, v. JESSE FRANKLIN FITHEN, Plaintiff in Error, Nos. 41694 and 41707—232 S. W. (2d) 519.

Division One, July 10, 1950.

Rehearing Denied, September 11, 1950.

*Milton B. Kirby* for appellants in error.

1034

*J. E. Taylor*, Attorney General, and *Harry H. Kay*, Assistant Attorney General, for defendant in error.

DALTON, J.—Defendants were jointly charged, tried and convicted of possession of burglar's tools under Sec. 4449 R. S. 1939 and the punishment of each was fixed at five years imprisonment in the penitentiary. A single record has been brought up for review on writ of error.

An information was duly filed in the Circuit Court of Cole County on February 3, 1949, wherein it was charged that defendants Fithen and Medley and one Robert Charles Hand "at the County of Cole, State of Missouri, on the 5th day of October, 1948, did wilfully, un-

lawfully and feloniously have in their custody and concealed about their persons one 13 pound maul, one ¼″x⅝″x9″ punch, two hack saw blades, two dry cell flashlights and three pairs of gloves, all of which said articles and tools, being then and there material implements, instruments and mechanical devices, adapted, designed and commonly used for breaking into any vault, safe, railroad car, boat, vessel, warehouse, store, shop, office, dwelling house, or door, shutter or window of a building of any kind, * * *."

A severance was granted to defendant Hand, the charge was subsequently dismissed as to him and he testified for the State in the trial of this cause. The State's evidence tended to show that on the morning of October 5, 1948, about 8 a.m., Troopers R. E. Swackhammer and J. C. Smith of the State Highway Patrol observed a Black and White Taxicab, bearing an Illinois license, parked beside U. S. Highway 50, just east of the city limits of Jefferson City. Defendants Fithen and Medley were seated in the taxicab (Medley in the front seat, Fithen in the back) and Hand was outside apparently fixing a windshield wiper. It was raining. Trooper Swackhammer inquired of defendants and Hand as to where they were from, what they were doing in Missouri and "who had authority to have a cab over here with an Illinois license." Hand claimed possession of the taxicab. The men stated they were going to Arkansas squirrel hunting. Later, defendant Medley said they were just riding around for the ride, but that he didn't own the automobile and had no control over it. The taxicab and men were taken to Troop F. Headquarters nearby, where an investigation was made as to violation of Public Service Commission regulations. The driver of the cab (Hand) was being investigated as to whether he had permission to have the cab in Missouri. The officers weren't actually taking the defendants to Troop Headquarters but they were with the cab driver. It took about 1½ hours "to run radio checks on the motor numbers and license numbers." The motor number of the cab was examined. Only the first three numbers could be read, the others had been obliterated. The secret number was examined, it didn't check, and the operator of the cab, Hand, was advised and his permission asked to look over the cab. Permission was granted. In the glove compartment of the cab the troopers found a 12 inch hack saw blade and a two cell flashlight. A case hardened steel punch ¼ of an inch by ⅝ and about 9 inches long was found under the front floor mat. It appeared to have been used. One pair of jersey gloves lined with red woolen material was found under the front seat and another over the back seat by the back glass, where a second two cell flashlight was also found. Fithen claimed one pair of gloves and one flashlight, but denied the tools. A thirteen pound sledge or maul was found in the trunk of the taxicab. The wooden handle of the sledge (approximately 26 inches long) had been sawed off and there was wood

fibre in the teeth of the hack saw blade. Subsequently, after defendants were arrested, a pair of gloves was found on Medley's person and a hack saw blade about 5½ inches long, broken in two, was taken from the fly of Fithen's trousers on the following day, after Fithen was in the Cole County jail. The several items mentioned were identified and offered and received in evidence. No firearms were found in the automobile or on the defendants.

The testimony of Robert Charles Hand tended to show that he resided in East St. Louis, Illinois; and that in October 1948 he was a cab driver operating a Black and White Taxicab in that city. He had known defendant Fithen about 2 weeks prior to October 5, 1948 and defendant Medley about 9 months. He saw Medley and Fithen on October 4, 1948 across the street from the cab office. Fithen said he wanted to use a cab to go to Springfield, Illinois, that he was going up there to look over a lumber yard, he "said he heard it would be a good place to go up there and burglarize." He told Hand that defendant Medley would go with him. Hand later picked up Fithen and went to a drug store in East St. Louis, where Fithen bought a two cell flashlight (later found in the cab). Fithen told Hand he wanted to buy a three cell flashlight, but it showed too much light, that "he covered it with his hands, and the light showed through the cracks between his fingers." Hand also wanted Fithen to buy a big flashlight, but he bought a small one. At Fifth and Summit streets in East St. Louis, they picked up defendant Medley, he was waiting for them there in an open field. He had some tools, a punch (like the one subsequently found in the car) a hack saw blade and a flashlight wrapped in a shop towel. In the taxicab, Medley placed the flashlight in the glove compartment and the hack saw blade there also, but between two license plates. They then drove to Tenth and Pickett, where defendant Medley cashed a check and paid witness $5.00. Prior to that time defendant Fithen had paid $11.50 and witness was to be paid additional money. Hand had first seen the sledge or maul at Salem, Arkansas, in the possession of Hand's brother. Two weeks before October 5, Hand saw the maul in the possession of defendant Fithen at Moko, Arkansas. Fithen obtained the maul from Hand's brother. Defendant Medley was present at the time. The maul was left in the back of No. 14, Chevrolet, Black and White Taxicab on a parking lot at Eighth and State streets in East St. Louis until October 4, 1948.

After Medley cashed the check on October 4, 1948, and Hand advised his mother he was making a trip, Hand, Fithen and Medley started for Springfield, Illinois. Before they left Fithen had told Hand to "go get the maul" and Hand got it from the other taxicab before he went for Fithen. On the trip, Fithen and Medley got the hack saw blade out of the glove compartment and started to saw off the handle of the maul. While on the way to Springfield, Illinois

defendant Medley said to Hand that "if they found a place they liked they would get out" and he "should drive twenty miles, and then turn around and come back, and they would put some cornstalks and wheat across the road so" he would know where to pick them up. On the way they stopped at a garage and Fithen or Medley said the garage probably had a vault in it. Hand had heard Medley speak of "squirrel hunting" before they were stopped by the patrol on U. S. Highway 50, near Jefferson City. At a Pontiac garage on the left hand side of Highway 50, Medley had said "that would be good squirrel hunting." Hand disclaimed ownership of the mentioned items which were found in the taxicab. He said he drove the taxicab where Fithen directed him from East St. Louis to Springfield, Illinois, then to Hannibal, Mexico, and to Jefferson City. Hand had been convicted of larceny in 1942 and served two years in the Illinois penitentiary.

After defendants had been arrested on the mentioned charge, and after they were advised of the charge and of their rights, they made certain voluntary oral statements to the officers. Fithen stated that he acquired the sledge in Arkansas; that it had been given to him; that Medley and Hand were with him; that he put the sledge in the trunk of the taxicab and had it with him; that he and Medley sawed off the handle; that he was the owner and in possession of one hack saw blade, one flashlight and one pair of gloves; that he took the gloves, one flashlight and sledge with him on the trip to Springfield, Illinois; and that he knew that Medley had in his possession a punch, one other flashlight and a pair of gloves. He said they left East St. Louis, Illinois on October 4, 1948; that he was going to Springfield, Illinois; that he and Medley had gotten Hand to take them there to look for a job; that they were to share expenses; and that Hand was to be paid for the trip. He said that at first the sledge was in the trunk of the cab; but that on the trip they got the sledge out and, with the long hack saw blade, they sawed off the handle. They started to work on the handle in the back seat of the cab, but Hand objected and stopped the cab. Fithen and Medley finished sawing the handle off outside of the cab. He said the cab in which the sledge was placed, when it was acquired in Arkansas, was not the cab used on October 4 and 5, 1948. He further stated that he was a railroad worker; that he had been convicted four times for automobile theft; that he had served sentences in Ohio, Kentucky, Illinois and Georgia; and that he had also been convicted of grand larceny and receiving stolen property.

On the same day, October 7, 1948, and under somewhat similar circumstances, defendant Medley made a voluntary statement to the officers. He said he was in the insect and spray business and was also a blacksmith. He first denied and later admitted his possession of part of the items found in the taxicab, to wit, the hack saw blade

found in the glove compartment of the cab, the punch, one flashlight and a pair of gloves (all of which were in·reach of Medley when he was seated in the front seat of the cab). He said that he bought the punch a day or two before his arrest; and that he brought the several articles along in case of car trouble. He admitted that he left East St. Louis on October 4, in the 1942 Buick, Black and White Taxicab, with Hand and Fithen. He said that Fithen was going up to look for a job; that he and Fithen hired the cab together; and that, on the way to Springfield he and Fithen finished sawing off the sledge handle outside the car on the shoulder of the road. He said he did not own the automobile or have any control of it.

The State further offered evidence tending to·show that hack saw blades of the kind found in the cab and on defendant Fithen were used for burglary in order to cut bars and gain entrance to buildings and warehouses. That the punch found was of the kind ordinarily used to gain entrance to safes and to drive pins out of the combination of locks ·or to drive pins from the outside into the safe after the knob had been knocked off. That hammers are ordinarily used to knock the combination off safes, or to bend bars back so as to gain entrance to buildings. That sledges are quite frequently used by burglars and that they saw off the handles for the purpose of being able to conceal the sledges under their coats. Flashlights of the kind found in the cab were of the kind used by persons breaking into buildings. Burglars usually operate at night and usually are equipped with flashlights. Gloves are worn by burglars to conceal fingerprints. The several items were very typical burglar's tools and similar to those frequently found in the possession of burglars. The sledge and punch were typical devices generally used to force entrance to buildings, stores and vaults. Hack saw blades without handles are used by means of wooden blocks that fit the hack saw blade and such blocks are often found at the scene of burglaries.

The only witness offered on behalf of defendants was defendant Medley. Defendant Fithen did not take the stand. Defendant Medley testified that he knew Hand in the penitentiary at Pontiac, Michigan. They were from the same town. He further said that he resided in East St. Louis and was in the extermination and pest control business; that prior to October 4 he had made arrangements with Hand to drive him to Springfield, Illinois, to see a man he knew; that he invited Fithen to go along; that prior to the beginning of the trip on October 4, 1948, they went to the home of Robert Hand and there they talked to Hand's father, and at the time, Hand's father said he would like for Hand to go to Arkansas to pick up his younger brother; that they started to .Springfield and their first stop was at Mitchell, Illinois, where they had to put fluid in the brakes; that when they arrived at Springfield, Illinois, he met Mike Hannon, a man to whom he sold chemicals; that he and Mike Hannon and

Fithen and Hand all ate at the truck stop where he went to see Hannon; that from Springfield, Illinois, they drove directly to Hannibal; and that he and Hand had first gotten acquainted in the penitentiary. He denied ever having seen the maul before it was taken from the car in Jefferson City. He said he had no part in sawing the handle ▉ off of it. He denied that he knew anything about the punch found in the car until after the arrest; or that he had seen the license plates, the flashlights or gloves on entering the car. They did not belong to him, except the one pair of gloves which he was carrying. He said he was going to Arkansas for the purpose of picking up some insect sprays at a place south of West Plains, Missouri.

▉ Plaintiffs in error first contend that "the trial court erred in overruling defendants' motion to suppress evidence inasmuch as such evidence was obtained by illegal search." The motion to suppress evidence was directed to the several items found in the taxicab. It was filed, heard and overruled prior to the trial. It charged (1) that the search was made without a search warrant; (2) that the officers of the Missouri State Highway Patrol had no authority to make a search or seizure (Sec. 8362 R. S. 1939); and (3) that the search and seizure were in violation of defendants' right under Art. 1, Sec. 15 of the Const. of Missouri. Trooper Robert E. Swackhammer was offered as a witness and he testified concerning the circumstance attending the arrests and search substantially as set out above. He further testified to finding, in the glove compartment of the cab, other and different 1948 Illinois license plates from those the cab was carrying. No objection was made at the trial to the State's evidence concerning the search of the cab and the items found therein, nor to the identification of the several items, but when the several identified exhibits were offered in evidence, defendants' counsel objected that they were "procured in unlawful search." See, State v. Hepperman, 349 Mo. 681, 162 S. W. (2d) 878, 887. No other statement or objection was made. The motion to suppress and the court's ruling thereon are not mentioned or referred to in any manner in defendants' motion for a new trial and the matter complained of is not before us for consideration. State v. Taylor (Mo. App.), 266 S. W. 1017, 1018(4); State v. Harris (Mo. App.), 281 S. W. 115; State v. Wood, 355 Mo. 1008, 199 S. W. (2d) 396, 398; State v. Holliday, 353 Mo. 397, 182 S. W. (2d) 553, 555. The motion for a new trial does assign error on the admission in evidence of "the articles and tools described in the information, for the reason that they were procured in an unlawful search," but no such assignment of error is presented or urged in this court.

▉ It is next contended that the trial court committed reversible error in permitting the state to show in its case in chief (and not for the purpose of impeaching the defendants as witnesses) state-

ments of the defendants as to prior arrests and convictions. In support of this assignment, plaintiffs in error contend (1) that "evidence of other crimes, when not properly related to the cause on trial, violates the defendant's right to be tried for the offense for which he is indicted" [State v. Leonard (Mo. Sup.), 182 S. W. (2d) 548, 551; State v. Ross, 306 Mo. 499, 267 S. W. 853, 854(3)]; and (2) that the mere fact that a witness has been charged with a criminal offense may not be shown to affect the credibility of the witness. State v. Wigger, 196 Mo. 90, 98, 93 S. W. 390; State v. Weisman, 238 Mo. 547, 557, 141 S. W. 1108.

At the opening of the trial and out of the hearing of the jury, counsel for defendants stated: "At this time I wish to object to the introduction of any evidence in this case pertaining to any previous record of either of these defendants for the reason that record of any previous convictions has no bearing on the issues in this case and would only serve to prejudice the jury against the defendants." In reply the court stated: "My present inclination is to allow the State to show, if it can, previous convictions of the defendants on intent, and not to confine the evidence to evidence to present burglaries and larcenies * * * I think the question of remoteness shows the weight of the evidence of this sort and not its admissibility. And, if the conviction is so remote, we can say, as a matter of law, it cannot have any bearing on the present intention. * * * I think the evidence is admissible and I am going to overrule the objection and, if he desires, he can make his record as we go along."

In the trial of the cause, State's witness Swackhammer was asked whether he had any conversation with defendant Fithen concerning prior convictions. A general objection was made, no ground was assigned and the objection was overruled. The examination continued: "Q. What did Fithen say? A. He admitted arrests and that he was convicted four times of automobile theft and —— Q. Did he mention as to whether or not he served any time in connection with those convictions? A. He served his first sentence in Chillicothe, Ohio. Q. After that, where? A. In Kentucky, and then Illinois. I think it was 365 days in Georgia. Q. Did you have any conversations of convictions of any other crimes? A. I did. Grand larceny and receiving stolen property. Q. And did you have any conversation as to his last conviction he had served time for? A. I don't remember that. Q. Did you have in your possession at that time the transcript of this man's record? A. I did. Q. Did you go over that? A. Yes, sir. Q. Did he admit that that was a complete record? A. He did."

Plaintiffs in error insist that the convictions for automobile theft were "not in any way related to the offense for which defendants were at bar and constituted an error for which the jury should have been immediately discharged." No such objection was made at the

trial. No request was made to discharge the jury and no request was made that any testimony be stricken. The objections consisted of the words "I object," and "We object to any reference as to prior convictions." No specific statement as to why counsel considered the evidence of prior convictions to be incompetent appears in the record other than the statement at the opening of the trial that previous convictions had "no bearing on the issues in this case." The testimony concerning the matter of arrests was not called for, nor responsive to any question. No motion was made to strike out that part of the testimony. See State v. Eisenhour, 132 Mo. 140, 145, 33 S. W. 785. Further, the admission of the evidence concerning prior arrests is not mentioned in the motion for a new trial and that matter is not before us for review.

The general objection to the admission of the evidence concerning the prior convictions was insufficient unless the evidence was wholly inadmissible for any purpose. State v. Balch, 136 Mo. 103, 108, 37 S. W. 808; State v. Cardwell, 332 Mo. 790, 60 S. W. (2d) 28, 31. Evidence which is relevant to any issue in the trial is admissible, unless there is a particular rule or ground for its exclusion. In this case it was necessary for the State to prove that the burglar's tools were possessed "with the general intent that they * * * be used for a burglarious purpose." State v. Hefflin, 338 Mo. 236, 89 S. W. (2d) 938, 945(12). An instruction required a finding that defendants "then and there possessed such articles with the intent to use them burglariously."

The well established general rule is that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. State v. Shilkett, 356 Mo. 1081, 204 S. W. (2d) 920, 922; 22 C. J. S. 1100, Sec. 686. Where intent is an essential element of the crime charged, evidence tending to show intent is admissible, although showing other offenses. State v. Hotsenpiller, 359 Mo. 1031, 224 S. W. (2d) 1014, 1017; 20 Am. Jur. 203, Evidence, Sec. 313. As to methods of proving other offenses, see Sec. 22 C. J. S. 1112, Sec. 690. Proof of an intent to steal was relevant and material to the issue of whether or not the burglar's tools mentioned were possessed with the intent that they be used for a burglarious purpose. State v. Balch, supra. Prior automobile thefts and grand larcenies evidenced by the mentioned convictions tended to show that defendant had an intent to steal, an element of the crime of burglary. State v. Oertel, 280 Mo. 129, 217 S. W. 64, 66(3). No issue as to remoteness was raised or ruled. Evidence of other crimes, where admissible on the issue of intent, can ▮▮▮ be shown independent of any conviction therefor. State v. Hefflin, supra (89 S. W. (2d) 938, 946); State v. Meininger, 306 Mo. 675, 268 S. W. 71, 77. The evidence of prior convictions for automobile theft and grand

larceny being relevant and material on the issue of intent to use the tools for a burglarious purpose was admissible. Jones' Commentaries on Evidence (2nd. Edition) Vol. II, p. 1172, Sec. 632. The mere fact that relevant evidence may tend to show a defendant guilty of a separate crime for which the defendant is not on trial does not make erroneous the admission of such evidence, where no such objection is called to the court's attention. State v. Rowe, 324 Mo. 863, 24 S. W. (2d) 1032, 1036; State v. Hobson (Mo. Sup.), 177 S. W. 374, 376. "It is well settled that objections must be specific and call the attention of the court directly to the ground upon which the objection is made." State v. Witherspoon, 231 Mo. 706, 720, 133 S. W. 323; State v. McGuire, 327 Mo. 1176, 39 S. W. (2d) 523, 527; State v. Murray, 316 Mo. 31, 292 S. W. 434, 437; State v. Daugherty (Mo. Sup.), 126 S. W. (2d) 237, 239. In State v. Hobson, supra (177 S. W. 374, 376), evidence of separate crimes was admitted over an objection not directed to that ground. The court said: "It is the duty of litigants, in objecting to improper evidence, to specifically point out the reason why such evidence should not be admitted. This for the reason that no court is supposed to both know and remember all the law all the time. * * * If the objection to this evidence had been made upon the ground that it tended to prove a separate crime for which defendant was not on trial, a more serious question would now confront us." On the record presented the assignment of error based on the admission of evidence of prior arrests and convictions must be overruled.

It is further contended that "the court erred in permitting these cases to go to the jury and in failing to sustain separate demurrers of the defendants"; that the record "was without substantial evidence of burglarious intent since the tools in question were all known by the court to have a basic, lawful use"; that the items were of a kind commonly carried in many automobiles; that they were scattered through the automobile; and that no stolen property was found upon the person of either defendant or in the automobile.

Plaintiffs in error insist that there was "no valid showing of conduct in the entire record that would indicate burglarious intent with the possible exception of the testimony of a third man," whose testimony is questioned in argument. The credibility of this witness (Hand) and the weight and value of his testimony was a matter for the jury in the first instance and, thereafter, for the trial judge, who permitted the verdicts of guilty to stand and entered judgment thereon. The testimony of witness Hand, if believed and accepted, was entirely adequate to show a criminal and burglarious intent on the part of each of the defendants. His testimony is set out above and need not be further reviewed. We hold that, wholly independent of the evidence of Medley's prior conviction for armed robbery or Fithen's four convictions of automobile theft and his conviction for

grand larceny, the record contains substantial evidence from which an inference could be drawn that burglar's tools were in fact possessed by the defendants with the general criminal intent that such tools be used for a burglarious purpose.

An assignment of error in the original brief, based upon the giving of instruction C-1, was withdrawn when the cause was argued in this court. A reply brief subsequently filed confirms the withdrawal of this assignment and it need not be considered.

Finally, it is contended that the record shows an extremely low standard of administration of criminal justice. No errors are assigned under this heading, but reference is made to a number of matters about which there was conflicting evidence at trial. Reference is further made to certain matters about which no complaint was made at the trial or in the subsequent motion for a new trial. On the record presented none of the matters mentioned under [526] this heading is for review in this court. We have examined the record proper and find it sufficient in all respects.

The judgment as to each defendant is affirmed. All concur.