**STATE of Missouri, Respondent,**

v.

**Thomas Goodrich GILPIN, Appellant.**

No. 46462.

Supreme Court of Missouri,

Division No. 1.

Feb. 9, 1959.

See also 320 S.W.2d 504.

Henry G. Morris, James C. Porter, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for respondent.

HOLMAN, Commissioner.

A jury found the defendant guilty of the offense of obtaining money by false pretenses and assessed his punishment at imprisonment in the penitentiary for a term of four years. Defendant has appealed from the ensuing judgment.

Section 561.370 (all statutory references are to RSMo 1949, V.A.M.S.), which was in effect at the time of the alleged offense, provided that "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing or by any other false pretense * * * obtain from any person any money, personal property, right in action or other valuable thing * * * shall upon conviction thereof be punished in the same manner and to the same extent as for feloniously stealing the money, property or thing so obtained." In support of the charge alleged in the indictment there was evidence introduced from which a jury could reasonably have found that defendant sold Edward B. Kettler promissory notes totaling $10,000 and received from Kettler the sum of $10,000 upon the representation that said notes were secured by a first deed of trust upon a certain house and lot when, in fact, the deed of trust described a vacant lot.

The defendant, Thomas G. Gilpin, was president of the Gilpin Company which had offices at 6615 South Kingshighway, St. Louis, Missouri. The company engaged in a real estate and insurance business. The prosecuting witness, Edward B. Kettler, a retired truck farmer, testified that he had known the defendant since 1947. In that year Kettler had bought three first deeds of trust from the defendant. He stated that one of those loans was paid off in 1948 and the other two in 1955; that in June 1955, he was in the office of the Gilpin Company and discussed buying a loan from defendant who stated that "he expected he would have a good loan for me, but he didn't have all the details; he would let me know"; that about a week later defendant called his residence and talked to Mrs. Kettler; that Mr. Kettler called back and the defendant told him that he had a very good loan for $10,000, in the name of a straw party, at 47 Highgate Road in St. Louis County; that on the same day he and his wife went to look at the property at that address and he felt that "it was a very

nice building." Mr. Kettler stated that the next day he called the defendant and told him he would buy the loan and made an appointment to close the transaction on June 17; that on the 17th he went to the office of the Gilpin Company and gave defendant two checks—one drawn on the Gravois Bank for $7,000 and the other drawn on the Lemay Bank and Trust Company for $3,000, both being payable to the Gilpin Company. In that transaction Mr. Kettler received from the defendant ten principal notes totaling $10,000, and ten interest notes. These notes were all signed by Ethel Johnson and made payable to B. Kramer and endorsed in blank by said payee; they recited that they were secured by a deed of trust on No. 47 Highgate Road.

At the time of closing the transaction Mr. Kettler also received a statement signed by the defendant acknowledging receipt of the $10,000 and stating that Mr. Kettler was to thereafter receive a first deed of trust, a certificate of title, and an insurance policy. These instruments were later sent to Mr. Kettler. The policy of insurance was written by the Gilpin Company as agent for the insurance company, and insured the dwelling at 47 Highgate Road for the sum of $10,000. The deed of trust and certificate of title described Lot 27 in Block 2 of Chevy Chase subdivision, in St. Louis County. At this point it may be stated that the real estate upon which is located the house numbered as 47 Highgate Road is described as the South 15 feet of Lot 11 and all of Lot 12 in Block 2, Chevy Chase subdivision.

Mr. Kettler further testified that at the time of closing the transaction with defendant he stated, "That's sure a nice house at 47 Highgate Road" and defendant replied, "It's the tops"; that at that time he was also told by defendant that the straw party, Ethel Johnson, was the mother of the lady who owned the property. On November 19, 1955, Mr. Kettler went to 47 Highgate Road and met Mr. and Mrs. Lazarus who occupied the dwelling at that address. While there he called the defendant

on the telephone and talked with him about the loan. Mr. Kettler stated that he called defendant again from his home that night, at which time defendant told him that the deed of trust was on a vacant lot nearby, and that the lot was worth $5,000 and "if I would bear with him he would see I didn't lose anything on it." Mr. Kettler also testified that on December 10 he called defendant and told him that an interest note and a principal note would be due December 14 and defendant said he would mail him a check for it, and that on December 12, he did receive defendant's personal check for $500; that in November 1956, he foreclosed the deed of trust and at the sale bid in the property for $2,500 and thus got title to the vacant lot.

Mrs. Kettler testified briefly at the trial but her testimony is set out in connection with one of the points hereinafter discussed.

Mr. Lazarus testified that he and his wife lived at 47 Highgate Road and had owned that property since March 1953; that there had been no mortgage thereon since April 1954; and that he had never had any dealings of any kind with the defendant.

The State also called Betty Kramer, the payee in the notes, who testified that she was the daughter of Ethel Johnson who signed the notes and deed of trust, and that her mother had suffered a stroke and was confined to a hospital at Farmington, Missouri. The witness stated that she had no interest in the property described in the deed of trust; that she had not loaned any money in the transaction, but had signed the various papers as a straw party at the request of the defendant.

Over the objection of the defendant the State was also permitted to show that defendant had obtained $6,370 from Anthony Canzoneri in a transaction very similar to the one heretofore described which involved property owned by Mr. and Mrs. John Allen. In connection with that transaction the evidence indicated that the Allens had purchased a lot at 6330 Idaho in

St. Louis, in October 1954, and had borrowed money through the defendant to construct a small residence thereon. The money borrowed had been held in escrow by the Gilpin Company and paid out as the work of construction had progressed. The following spring the Allens purchased the lot next door which is described as No. 6326 Idaho. In April 1955 they signed papers for a $6,500 construction loan on this vacant lot so that the defendant could negotiate the sale of those notes and obtain money so that they could construct a residence on that lot in the same manner as had been done on the lot at 6330 Idaho. The defendant, on two or three occasions during the summer, told the Allens that he had not been able to place the loan, so in September 1955, at defendant's request, they signed other papers for a loan on that lot.

Mr. Canzoneri, an attorney, testified that he had bought various deeds of trust from Mr. Gilpin since 1944; that in January 1955, defendant asked him to make a $6,500 loan on the house that was being constructed at 6330 Idaho but he refused to do so until the house was completed. He stated that the defendant called him in April and told him the house was completed and he then agreed to make the loan; that on May 6, 1955, defendant delivered the various papers to the witness at his office and received a check payable to the Gilpin Company for $6,370, which was the principal amount of the notes, less a 2% commission. At that time he received a loan statement signed by defendant indicating that the loan was on the property at 6330 Idaho Avenue, and stating that the certificate of title, deed of trust and insurance policy would be delivered thereafter. The witness further testified that about October 20, defendant told him that his company had been placed in receivership. The witness then contacted the Allens and thereafter discovered that the deed of trust securing his notes described the vacant lot at 6326 Idaho rather than the improved property at 6330 Idaho. Mr. Canzoneri then called defendant to his office and asked why he had sold him the deed of trust on a vacant lot and the defendant replied, "I got in a jam with Mrs. Steiner and I needed some money."

The defendant did not testify at the trial. The only evidence he offered was the testimony of Robert Harris of the American National Bank in which the Gilpin Company had an account during the year 1955. The testimony of that witness indicated that the money obtained from Mr. Kettler and Mr. Canzoneri had been deposited in the account of the company. On cross-examination Mr. Harris stated that the persons authorized to sign checks upon the account of the Gilpin Company were T. G. Gilpin (defendant), S. W. Gilpin, and Marie F. Gilpin.

The first point briefed by defendant is that the court erred in permitting the State to present evidence tending to prove that defendant obtained $6,370 from Anthony Canzoneri by false pretenses. He contends that the admission of that evidence violated his constitutional right "to demand the nature and cause of the accusation," Article 1, Section 18(a), Constitution of 1945, V.A.M.S., and also the rule that evidence is not admissible to show that defendant is guilty of the commission of other independent crimes. Cases cited include State v. Teeter, 239 Mo. 475, 144 S.W. 445, and State v. Leonard, Mo.Sup., 182 S.W.2d 548.

We, of course, recognize the general rule upon which defendant relies. However, a well-established exception to the rule is applied in prosecutions for false pretenses and similar criminal frauds. "It is established by the great weight of authority that in a prosecution for false pretenses, evidence that the accused, at about the time of the offense charged, made similar false representations or engaged in similar fraudulent dealings is admissible as tending to show a fraudulent intent or motive in the transaction on which the prosecution is based, as where a plan or scheme to defraud other victims than the complain-

ing person or persons is indicated." 22 Am. Jur., False Pretenses, Section 109, p. 506. We have often held that in prosecutions for obtaining money or property by false pretenses evidence that defendant committed or attempted similar offenses is admissible, if not too remote, in order to prove the criminal intent of the accused. State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198; State v. Hotsenpiller, 359 Mo. 1031, 224 S. W.2d 1014; State v. Neal, 350 Mo. 1002, 169 S.W.2d 686; State v. Craft, 344 Mo. 269, 126 S.W.2d 177; State v. Michels, Mo. Sup., 255 S.W.2d 760; State v. Jackson, 112 Mo. 585, 20 S.W. 674.

■ In the instant case it appears that defendant obtained the money from Mr. Canzoneri a little more than a month before Mr. Kettler bought the notes heretofore described. The cases cited in the preceding paragraph support our view that the Canzoneri transaction was not sufficiently remote to cause evidence of it to be excluded upon that ground. Moreover, we note that the plan or system followed by the defendant in obtaining the money from Mr. Canzoneri was very similar to that used in the Kettler transaction. We accordingly rule that the trial court did not err in admitting the evidence complained of.

The next contention of defendant is that the court erred in overruling his motion for judgment of acquittal, filed at the close of the entire case, because the State failed to prove the essential elements of the indictment in five respects specified. They are:

■ 1. It is said that there is no proof to support the allegation that defendant did "represent, pretend and state to the said Edward B. Kettler that Thomas Goodrich Gilpin was acting as agent for the owner of a house and lot situated at Number 47 Highgate Road, Chevy Chase Subdivision, St. Louis County, Missouri." It is doubtful that the foregoing allegation was an essential element of the instant charge, as the crux of the charge was the false representation made by defendant that the notes were secured by a deed of trust on the property located at 47 Highgate Road. However, we need not decide that point as we have concluded that the evidence was sufficient to reasonably support a finding that defendant made the questioned representation to Kettler. It is true that defendant did not explicitly state to Kettler that he was acting as agent for the owner of the property in question but that fact may be proved by circumstantial evidence. It should be noted that Kettler had previously bought three other loans from defendant and it is fair to assume that they both understood that Kettler was familiar with the procedure to be followed. That fact, when considered in conjunction with defendant's entire course of conduct in connection with the transaction, would be sufficient to authorize a finding that defendent inferentially represented that he was acting for the owner of the property. State v. Bowdry, 346 Mo. 1090, 145 S.W.2d 127.

■ 2. We find no merit in defendant's next point to the effect that the evidence failed to support the allegation that defendant made false representations as to past or existing facts such as are required to support a charge of false representation. Without developing the contention in detail, we think it sufficient to suggest that a review of our factual statement will reveal that the evidence is adequate to authorize a finding that defendant represented that the deed of trust described the improved property at 47 Highgate—a representation as to an existing fact.

■ 3. The next contention is also without merit. It is that the evidence failed to prove that the prosecuting witness paid over "lawful money of the United States" as alleged. The suggestion is made that checks drawn on Kettler's account do not constitute "lawful money." All of the cases cited by defendant in support of that contention are embezzlement prosecutions.

and are not controlling in the case before us. In prosecutions for obtaining money by false pretenses we have uniformly held that the allegation that defendant obtained "lawful money" is sufficiently proved by a showing that a check was given upon which cash was received. State v. Bowman, Mo. Sup., 247 S.W. 143; State v. Chick, 282 Mo. 51, 221 S.W. 10; State v. Foley, 247 Mo. 607, 153 S.W. 1010; State v. Rosenheim, 303 Mo. 553, 261 S.W. 95.

■ 4. It is also contended that there is a failure of proof that defendant received the money, as it is undisputed that the checks issued by Kettler were made payable to "Gilpin Company" and were deposited in the bank account of the corporation. In this connection we note that defendant was president of the corporation and was authorized to sign checks drawn upon the corporate bank account. It also appears in the evidence that Kettler delivered the checks to the defendant and it is reasonable to infer that defendant directed that Kettler make the checks payable to the corporation. We have the view that it is immaterial whether the checks were made payable to the defendant or his nominee. See State v. Rosenheim, supra. See also the following quotation from 22 Am.Jur., False Pretenses, Section 31, p. 462: "The absolute necessity of actual physical tradition from the accuser to the defendant personally was early relaxed to the extent of holding that a delivery to a person designated by the defendant to receive for his benefit sufficed. This was on the theory that the defendant expressly constituted the person so designated his agent and that by such delivery the property passed out of the title, possession, and control of the accuser and into that of the defendant as completely as if the physical delivery had been to the latter in person." Moreover, it is apparent that money in the corporate bank account was available to defendant. We note the testimony of Mr. Canzoneri that his check was made payable to Gilpin Company and when he later called upon defendant for an explanation defendant

stated, "I got in a jam with Mrs. Steiner and I needed some money."

The cases cited by defendant in support of the point under consideration are distinguishable upon the facts. In State v. Bowman, supra, the prosecuting witness bought shares in an association referred to as a "common-law trust," and at the time of the purchase the money was deposited in the bank account of the association and it was shown that defendant was not authorized to withdraw money from that account. In State v. Smalley, Mo.Sup., 252 S.W. 443, and State v. Woerth, Mo.Sup., 256 S.W. 456, the prosecuting witness in each case purchased an interest in a partnership of which the defendant owned an interest and the money was paid to the partnership. That evidence was held not to sustain an allegation that the money was paid to the defendant. Those decisions are based, at least in part, upon the theory that payment to the partnership was technically a payment by the prosecuting witness to himself.

■ 5. Defendant also asserts that the evidence wholly failed to establish the venue of the offense charged. He states that there is no evidence that the office of the Gilpin Company was located in the City of St. Louis. We do not agree. While it is true that there was no verbal testimony that the office was located in the City of St. Louis, we find that there was considerable documentary evidence from which the jury could reasonably have found that the Gilpin office was so located. However, we need not actually determine the sufficiency of the evidence to prove venue as the point was not raised in the motion for new trial and hence is not before us for review. State v. Kenyon, 343 Mo. 1168, 126 S.W.2d 245; State v. Page, Mo.App., 186 S.W.2d 503.

The third point briefed is that the court erred in giving Instruction No. 1. This was the main instruction in the case. The reason advanced in support of that contention is that there was no evidence to sup-

port the submission of various facts therein hypothesized. These are substantially the same as the points advanced in support of defendant's contention that the court erred in overruling his motion for judgment of acquittal. Since we have already ruled these points against defendant it would serve no useful purpose to repeat our discussion in connection with the attack on Instruction No. 1 based upon the same contentions as to evidentiary deficiencies. We accordingly rule this point against defendant.

 The final point relates to the testimony of Minnie Kettler, wife of the prosecuting witness. It is said that the court erred in overruling objections to certain parts of her testimony and in overruling the following motion at the conclusion of her testimony: "Mr. Morris: I move to strike all her testimony as being incompetent, irrelevant and not proving any issues in the case; she is not named as one that any representations were made to at all."

A review of the testimony of this witness indicates that she testified without objection that Mr. Gilpin had called and "said he had a good loan at 47 Highgate Road, and my husband wasn't home at the time, and when my husband came home he called him." Thereafter, over defendant's objection, she stated that she had gone with her husband and looked at the house at 47 Highgate Road. She also identified an exhibit as a picture of the house located at that address. We think it is obvious that the testimony objected to was relevant and that the court properly admitted it. It also should be apparent that the court ruled correctly in overruling the general motion to strike *all* of the testimony of Mrs. Kettler. As we have indicated, at least a part of her testimony was competent and properly admitted. On a general motion of that kind the court was not required to review all of the testimony of the witness and strike out the portions, if any, that were incompetent.

An examination of that part of the record relating to matters not required to be preserved in the motion for new trial or presented in the brief discloses no error. We have concluded that the judgment should be affirmed. It is so ordered.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.