**STATE of Missouri, Plaintiff-Respondent,**

v.

**James Lee MORROW,
Defendant-Appellant.**

**No. 36669.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Sept. 7, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Sept. 30, 1976.

Application to Transfer Denied
Jan. 10, 1977.

Robert A. Hampe, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Timothy J. Verhagen, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Nels C. Moss, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

RENDLEN, JUDGE.

Defendant James Lee Morrow appeals his conviction of first degree robbery by means of a dangerous and deadly weapon, § 560.-135 RSMo. 1969, V.A.M.S. Having a prior conviction of burglary second degree and stealing, Morrow was sentenced to thirty-five years imprisonment, § 556.280 RSMo. 1969, V.A.M.S.

On September 30, 1973, Paul Pittman, attendant at a St. Louis automobile service station, was robbed at gunpoint of his wallet and cash-on-hand at the station. Curiously, he received an envelope in the mail, sans return address, containing his stolen wallet, in turn containing receipts bearing defendant's name and address. These were delivered to the police resulting in defendant's prompt arrest and later identification by Pittman at a lineup. On March 19, 1974, Pittman again identified defendant at a preliminary hearing, attended by two unofficial stenographers, Roseann Montefelice and JoAnn Stowers.[1]

Pittman, the only identifying witness, died in August 1974 prior to trial; however, his preliminary hearing testimony was substantively admitted at trial when witnesses Montefelice and Stowers were permitted to read from their transcribed notes of the preliminary hearing.

■■ Points I and II[2] of defendant's brief fail to comply with Civil Rule 84.04, V.A.M.R., made applicable to criminal appeals by Criminal Rule 28.18, V.A.M.R., in that they do not "isolate and formulate the precise issue[s] to be reviewed . . .," State v. Murphy, 508 S.W.2d 269, 276[9] (Mo.App.1974); nor do they tell us wherein and why the rulings sought to be reviewed are claimed to be erroneous. Rule 84.04(d). These functions should not be relegated to the written argument. State v. Velas, 537 S.W.2d 881, 883[3] (Mo.App.1976); State v. Dennison, 428 S.W.2d 573, 579[8] (Mo.1968). Defendant claims the entire testimony of Montefelice and Stowers was inadmissible as hearsay. Though these points lack specificity, we have examined the related argument section[3] and find it goes not to the matter of hearsay as suggested by the points but deals with questions of "best evidence" and "past recollection recorded" and whether the witnesses at trial could read from their transcribed notes of the preliminary hearing or should they be required to testify from memory or independent recollection? These pose issues different from those suggested in the points and will not be reviewed. State v. Schulten, 529 S.W.2d 432, 434[4] (Mo.App.1975); Rule 84.04(e). Conversely, issues developed for the first time in the argument section different from those in the points relied on preserve nothing on appeal. Blond v. Overesch, 527 S.W.2d 663, 668[5] (Mo.App.1975); Scott v. Home Mutual Telephone Co., 510 S.W.2d 793, 796[5] (Mo.App.1974).

■■ Point III repeats the inadequately posited hearsay contention contained in Points I and II as to Montefelice's and Stowers' testimony but adds a general allegation that such testimony "was so prejudicial towards the defendant as to require its omission." This is a bald assertion of error, a mere conclusion which tells nothing of wherein or why the evidence was prejudi-

---

1. Ms. Montefelice was employed at the Public Defender's Bureau and Ms. Stowers by the Parole Office. Both were regularly required to record such testimony for their respective offices.

2. Defendant's Points I and II are as follows:
   I. The Learned Trial Court erred in denying Defendant's Motion to Quash Subpoena Duces Tecum and in allowing Roseann Montefelice to testify, because the testimony consti-tuted hearsay and did not fall under any recognized exception to the hearsay rule.
   II. The Learned Trial Court erred in allowing JoAnn Stowers to testify, because the testimony constituted hearsay and did not fall under any recognized exception to the hearsay rule.

3. There is only one argument section covering Points I and II.

cial or how the action of the trial court constituted error. *State v. Starkey*, 536 S.W.2d 858, 865[7] (Mo.App.1976); *Griffith v. State*, 504 S.W.2d 324, 327[3] (Mo.App. 1974). Defendant has not isolated or defined the issue nor shown with specificity those portions of the witnesses' testimony deemed prejudicial and in what manner he was prejudiced. *See State v. Holland*, 530 S.W.2d 730, 735[14] (Mo.App.1975). All adverse testimony may be considered prejudicial in the sense it harms the opposite party's cause but this does not assist us in determining the issue presented for review. "We have no duty to seine the argument portion of appellant's brief or the transcript on appeal to ascertain the whereins and whys of claimed errors . . ." *Griffith v. State, supra* at 327. Further, appellant's argument supporting Point III is subject to the criticism of *Cady v. Kansas City Southern Railway Co.*, 512 S.W.2d 882, 886[9] (Mo.App.1974), that it contains only "cursory, unsupported, disjointed legal conclusions, devoid of any logical suasion . . [and is] completely. unacceptable under either the letter or intent of the appellate rules."

■ Defendant's Point IV [4] like III is a "bald assertion of error" failing to meet the Rule's requirement and the accompanying argument is unrelated, going instead to Point V. Points I through IV preserve nothing for appellate review. *State v. Ball*, 527 S.W.2d 414, 415[1] (Mo.App.1975); *State v. Brown*, 535 S.W.2d 606 (Mo.App. 1976).

■ For his Point V, defendant contends the trial court erred by allowing witnesses present at the preliminary hearing to testify that Paul Pittman identified defendant by pointing at him. At that hearing Pittman, when describing his assailant, was asked:

Q. "Do you see that person [the robber] in court today?"

A. "Yes."

Q. "Point him out please."

### A. "Right there. (Indicating)"

Four witnesses testified to the fact of Pittman's identification of defendant at the preliminary hearing. Ms. Montefelice was asked about her notes and explained she used the phrase "indicating" to describe Pittman's action following his verbal answer, "Right there." She remembered Pittman pointed at a *defendant* present at the preliminary hearing but could not identify Morrow as that defendant; however, she testified her notes were from preliminary hearing "number 31, James L. Morrow, March 19, 1974." Ms. Stowers, the other unofficial stenographer, testifying to much the same effect, corroborated that Pittman pointed toward the place where the *defendant* (who she could not confirm was this James Morrow) and defense counsel at the preliminary hearing were seated. Witnesses Darville Jefferson, owner of the service station, and Officer Kleinsorge were present at the preliminary hearing and each testified Pittman identified his assailant by pointing toward defendant James Lee Morrow.

Defendant, citing *State v. Lynn*, 184 S.W.2d 760 (Mo.App.1945), contends such testimony constituted inadmissible conclusions. In *Lynn* the defendant, charged with felonious assault of one Lark Chandler, fired his pistol striking the left front fender of the car in which Chandler was seated. Defendant testified he intended to shoot the left front tire, not Chandler, but the trial court refused defendant's witnesses' testimony that defendant had shot at the "left front tire or wheel" of Chandler's automobile.

This ruling was affirmed on appeal because "[d]efendant's intent was an issue to be determined by the jury from all the relevant facts and circumstances in the case . . . not to be shown by the mere opinion or conclusion of any witness." *Lynn, supra* at 765. There defendant's intent was a specific issue to be proved. The

---

4. Defendant's Point IV is as follows:
   IV. The Learned Trial Court erred in allowing Roseann Montefelice and JoAnn Stowers to testify, because the testimony was irrelevant and immaterial.

jury convicted Lynn of common assault, which required a finding that his intent was not to shoot at Chandler. Had the jury found he fired at Chandler, Lynn's offense "would have risen to the grade of assault with intent to kill . . . ." *State v. Lynn, supra* at 767[14–17]. In effect, *Lynn* held that to permit a witness to state what defendant intended, when intention was a central issue, "would have been an invasion of the special province of the jury." *Lynn, supra* at 765[6].

Defendant here asserts that "[s]ince there were a number of people located in the courtroom at the time of the hearing and at least the defense attorney would have been sitting very close to the defendant and since these witnesses could only have *seen* Mr. Pittman raise his hand in a certain direction, there is no way these witnesses could testify as to whom Mr. Pittman pointed."

But unlike *Lynn*, testimony of the witnesses in the case at bar did not go to Pittman's intent. The matter to be shown was whether Pittman communicated an identification to those present at the preliminary hearing. These witnesses were competent to describe Pittman's actions, that he "indicated" or "pointed"[5] and to relate the general direction in which he pointed and toward whom or who was seated in the direction of his gesture.

Generally, "a witness must state facts, from which the jurors are to form their opinion." *Stephens v. Kansas City Gas Co.*, 354 Mo. 835, 191 S.W.2d 601, 606[8] (1946); *Adams v. Carlo*, 84 S.W.2d 682, 684[2, 3] (Mo.App.1935). When a witness has personally observed events, he may testify to his "matter of fact" comprehension of what he has seen in a descriptive manner which is actually a conclusion, opinion or inference, if the inference is common and accords with the ordinary experiences of everyday life. *Brawley v. Esterly*, 267 S.W.2d 655, 662[9] (Mo.1954); *see Whitney*

*v. Central Paper Stock Co.*, 446 S.W.2d 415, 419[6] (Mo.App.1969); *Pedigo v. Roseberry*, 340 Mo. 724, 102 S.W.2d 600, 606[4–7] (1937); *Adams v. Carlo, supra* at 684[3]. We hold the trial court did not err admitting this testimony describing Pittman's actions when pointing out defendant. Testimony that he "pointed" was a " 'matter of fact' comprehension" of what the witnesses had personally observed. It was for the jury to believe or disbelieve the testimony and decide if defendant had been identified as the robber. Testimony that an identifying witness pointed at defendant is equally admissible as the attorney's testimony that a juror had given him a "dirty look" when challenged on voir dire in *Buchanan v. Scott County Milling Co.*, 157 S.W.2d 810, 812[1] (Mo.App.1941). The point is denied.

In his Point VI defendant contends the trial court erred in allowing the State to establish witness Pittman's death by a coroner's report because a death certificate was available and the coroner's report was "prejudicial" to defendant. We disagree. Death need not be proved by a death certificate, thus availability or nonavailability of the certificate is not controlling. Section 193.170 RSMo. 1969, V.A.M.S., makes the certificate of death prima facie evidence of the facts stated therein, but it is given no greater force than any other prima facie evidence of that fact. *Turner v. National Benev. Soc.*, 224 Mo.App. 463, 28 S.W.2d 125, 126[5, 6] (1930); *Accord, Pfingsten v. Franklin Life Ins. Co.*, 330 S.W.2d 806, 815[6] (Mo.1959). Death, like any other fact, may be shown by many types of circumstantial or direct evidence. *State v. Jackson*, 495 S.W.2d 80, 87[8] (Mo.App. 1973); *Prudential Ins. Co. of America v. Sutton*, 368 S.W.2d 522, 527[6] (Mo.App. 1963). The coroner's report was relevant to establish the fact of Pittman's death, an indispensible prerequisite for offering the record of his testimony from the preliminary hearing. Defendant concedes that the

---

**5.** Montefelice's testimony was to the effect that Pittman pointed in the direction of defendant. Stowers stated, "He [Pittman] pointed to the man seated next to the defense counsel." Jefferson stated, "He [Pittman] pointed in the direction of this gentleman [Morrow] sitting here." Kleinsorge testified that Pittman "pointed in the direction of defendant."

substance of the testimony from the employee of the coroner's office "was that Mr. Pittman was dead." Such relevant evidence is admissible unless there is a particularly overriding ground for its exclusion. *State v. Medley,* 360 Mo. 1032, 232 S.W.2d 519, 524[4] (1950); *State v. Poucher,* 303 S.W.2d 197, 198[2] (Mo.App.1957). Appellant cites *Conley v. Kaney,* 250 S.W.2d 350, 353[3, 4] (Mo.1952), to the effect that if evidence pertaining to collateral matters brings into the case a new and controversial matter which "would result in confusion of issues, constitute unfair surprise, or cause prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded." However, merely because it *may* tend to prejudice the jury against a party does not necessarily render otherwise admissible evidence inadmissible. *State v. Mullen,* 528 S.W.2d 517, 523[15] (Mo.App.1975); *State v. Tillett,* 233 S.W.2d 690, 691[9] (Mo.1950). Assuming arguendo that the use of the coroner's report was prejudicial to defendant, we cannot say that its prejudicial effect was wholly disproportionate to its usefulness. *Conley v. Kaney, supra* at 353; *Jones v. Terminal R. R. Ass'n of St. Louis,* 242 S.W.2d 473, 477[7] (Mo.1951). Appellant argues a coroner's report is usually made only when the circumstances surrounding the death suggest violence, but he does not explain and nothing appears in argument or proof to show how or why defendant would thereby be prejudiced sufficiently to require exclusion of the testimony. As stated by the court in *Mulliken v. Presley,* 442 S.W.2d 153, 158[8] (Mo. App.1969), this was not "so prejudicial that we can say with clear conscious" that its use deprived defendant of a fair trial. *Cf., State v. Moore,* 435 S.W.2d 8, 11[1] (Mo. banc 1968). The admissibility of potentially prejudicial evidence is within the trial court's discretion and we find no abuse of that discretion here. *State v. Richardson,* 515 S.W.2d 557, 560[4] (Mo. banc 1974); *State v. McCabe,* 512 S.W.2d 442, 443[9] (Mo.App.1974). The point is denied.

6. Defendant's Point VII is as follows:
   VII. The Learned Trial Court erred in failing to grant Defendant's Motion for a Mistrial

 Defendant's Point VII[6] fails to preserve any issue for review. It does not tell us wherein or why the action to be reviewed was erroneous. Rule 84.04(d), V.A.M.R.; *State v. Dennison, supra* at 579[8].

The judgment of the trial court is affirmed.

WEIER, P. J., and DOWD, J., concur.

after a State's witness had testified to an out-of-court identification.