**STATE of Missouri, Respondent,**

v.

**Charles Lee THOMAS, Appellant.**

**No. 39016.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 6, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 16, 1979.

Michael A. Gross, Gross & Goodman, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Steven Clark, Asst. Attys. Gen., Jefferson City, Ronald L. Boggs, Pros. Atty., William N. Seibel, Jr., Asst. Pros. Atty., St. Charles, for respondent.

DOWD, Presiding Judge.

Charles Lee Thomas was charged by information with capital murder. The penalty provision of the information was dismissed due to the fact that discretionary alternative penalties similar to those articulated in § 559.005 and § 559.009 RSMo 1975 had been declared unconstitutional by the United States Supreme Court. (*See, Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed. 346 (1972)). The charge was revised to read murder in the first degree and the corresponding penalty provision was to be governed by § 559.011 RSMo 1975.[1]

Thomas was convicted by a jury of murder in the second degree and assessed a sentence of 55 years imprisonment. In this appeal from the judgment entered on the verdict, Thomas alleges that the trial court erred in three respects.

■ Since appellant has challenged the sufficiency of the evidence to sustain his conviction, we shall consider this point first. Our review of this issue is limited to a consideration of all the direct and circumstantial evidence in the record tending to prove the defendant's guilt, drawing all reasonable inferences therefrom in favor of the State. *State v. Allen*, 555 S.W.2d 36 (Mo.App.1977).

The facts adduced at trial revealed that Thomas, who was employed as a security officer at City Hospital, owned a gun for use in his profession. On the evening of March 19, 1976, Thomas and two women, Carol Boyd and Jeanette Whit went for a car ride. Ms. Boyd, who was operating the vehicle, drove the occupants to St. Charles, where the car became stuck on railroad tracks. In a statement made to police, Thomas explained that Ms. Whit became alarmed upon seeing his gun, and left the car. Thomas followed her, and while he was adjusting the position of his weapon for comfort, it discharged, striking and killing Ms. Whit.

After hearing the gunshot, the St. Charles Police fired warning shots and proceeded to the railroad tracks. Thomas testified that he fled the scene to avoid the gun fire. Appellant and Ms. Boyd were apprehended near a police roadblock after being chased by the police. The weapon, identified by Thomas as belonging to him, was found on the street. While in police custody, Thomas exculpated Ms. Boyd from involvement in the shooting.

At the trial, Thomas repudiated the contents of the statement made to police. He

1. The order entered by the trial judge on September 7, 1976 was as follows:

"ORDER

Parties having submitted defendant's Motion to Dismiss Information and the Court being now fully advised, it is ordered that said Motion to Dismiss Information be granted only in the respect that the United States Supreme Court has declared a penalty as set forth in Sections 559.005 and 559.009 R.S.Mo. for capital murder to be unconstitutional and the same is, therefore, hereby, upon defendant's motion, declared to be unconstitutional, it is, therefore, further ordered that the charge herein be deemed to be murder in the first degree, pursuant to Section 559.011 R.S.Mo., and shall hence forth be referred to in this proceeding as murder in the first degree with a penalty provision as provided in Section 559.011 R.S.Mo., i. e., life imprisonment with no eligibility for probation or parole until service of a minimum of fifty years of sentence. (See also Section 559.009.) Defendant's Motion to Dismiss Information is in all other respects overruled.

Enter:

Dated September 7, 1976

/S/ Donald E. Dalton

Donald E. Dalton
*Circuit Judge (Div. 2)*

Filed Sept. 7, 1976"

justified his prior statement regarding the shooting as being precipitated by police brutality and threats of physical violence. His recollection of the occurrence was that he left the car to push it from the tracks. While doing so, he heard gunshots, and thought his car was being shot at. He testified that he did not kill Jeanette Whit, and was uncertain as to who had fired the fatal shot.

Ms. Boyd, the appellant's paramour, testified that she was angry with Thomas on the evening of March 19, because he was entertaining Ms. Whit in his apartment. Ms. Boyd had waited outside Thomas' apartment in his auto until appellant and Ms. Whit left the building a few hours later. The couple joined Ms. Boyd in the car, after which the latter drove at appellant's suggestion.

Ms. Boyd testified that when the car became stuck on railroad tracks in St. Charles, the appellant muttered either "You've got to go" or "we got to go" before leaving the car with Ms. Whit. Although Ms. Boyd had stated in her deposition that appellant ordered her to turn up the volume of the radio as he left the car, she had no recollection of this at the trial. Shortly after Thomas and Ms. Whit exited from the car, Ms. Boyd heard a noise that sounded like a firecracker. As Thomas returned to the car, Ms. Boyd viewed Ms. Whit sitting on the ground. Thereafter Thomas hurriedly freed the car from the tracks and drove it away from the riverfront. Ms. Boyd further testified that during the escape she noticed that the appellant made a motion as if he were throwing something out the window.

The police found Ms. Whit, lying in a prone position, nude from the waist up and wearing slacks which had been torn in the front. As previously mentioned, a weapon identified by the appellant as his, and assayed by a forensic analyst as having discharged the bullet which killed Ms. Whit, was found in the street.

■ The assessment of the credibility of the witnesses and the resolution of the conflicts in the testimony are functions of the jury rather than of the reviewing court. *State v. McNeal*, 539 S.W.2d 722 (Mo.App. 1976). We find there was substantial evidence to support the jury's finding of guilt. Accordingly, this point is ruled against the appellant.

■ In his first point, appellant contends that the saving clause of § 559.011[2] is not effective because neither § 559.005 nor § 559.009 (RSMo 1975) have been declared unconstitutional by the United States Supreme Court or the Supreme Court of Missouri. The main thrust of this point is that a declaration of unconstitutionality is a condition precedent to the invocation of § 559.011 RSMo 1975.

This point was addressed by the Supreme Court of Missouri in *State v. Duren*, wherein it was said:

"We think the argument lacks merit. In the first place, the legislative intent obviously was to provide for the possibility the 'penalty' could not be imposed for any reason; and secondly, this court, now having ruled that the 'penalty' is unconstitutional under the existing statutes, has made the second contingency effective."
547 S.W.2d 476, 480–481 (Mo. en banc 1977).

We are of the opinion that this holding refutes appellant's contention. Accordingly, this point is ruled against the appellant.

2. It will be noted that this section was repealed in 1977, and has been replaced by § 565.016 RSMo 1977. Section 559.011 RSMo 1975 in effect at time of the judge's ruling was as follows:

"559.011 ALTERNATIVE PUNISHMENT IF DEATH PENALTY DECLARED UNCONSTITUTIONAL.—If the category of capital murder or the penalty prescribed herein is declared to be unconstitutional by the Missouri Supreme Court or the United States Supreme Court, all killings which would be capital murder under any of the circumstances specified in section 559.005 shall be deemed to be murder in the first degree and the offender shall be punished accordingly, except that he shall not be eligible for probation or parole until he has served a minimum of fifty years of his sentence."

Secondly, appellant contends that the trial court abused its discretion by denying appellant the opportunity to present character witnesses to testify in his behalf.

■ The trial court conditionally excluded such testimony due to appellant's non-compliance with the Rules of Discovery. (25.30–25.45) The court provided, however, that an exception to the ruling would be made if unusual circumstances occurred during the progress of the trial. Despite the latitude offered by this ruling, appellant's counsel announced his abandonment of this aspect of his trial strategy.

Appellant's counsel explained the non-compliance as resulting from an "eleventh hour" decision to place the appellant on the stand. When this strategy was planned, the day prior to trial, the prosecution was advised of the name and place of employment of a character witness.

We find no abuse of discretion in the trial court's ruling. The State filed a request for disclosure on July 29, 1976. Following a hearing on pretrial motions November 4, 1976, appellant was requested to file the requisite disclosure material by November 19, 1976. The name of the character witness was communicated to the State on January 3, 1977.

■ It is appellant's position that a close reading of the discovery rules permits the inference that the notification provision may be deemed satisfied if counsel supplies the information once the intent to call a witness is formed.

In *State v. Ellis*, 567 S.W.2d 454 (Mo.App. 1978) wherein a similar theory was interposed, this court said "determination of compliance with the disclosure rule cannot be based upon a party's subjective intent." (567 S.W.2d 454, 456) Furthermore, as appellant declined the opportunity to make an offer of proof regarding the testimony of the proposed character witness, we are unable, as was the trial court, to appraise the degree of prejudice which could have potentially inured to the State. Accordingly, we rule this point against the appellant.

Judgment affirmed.

WEIER, C. J., and CRIST, J., concur.