STATE of Missouri,
Plaintiff-Respondent,

v.

Michael Lee LENZA,
Defendant-Appellant.

No. 39114.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 24, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 15, 1979.

Application to Transfer Denied
July 17, 1979.

Donald L. Wolff and Paul J. Passanante, Clayton, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Jeff W. Schaeperkoetter, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., James Hartenbach, Asst. Pros. Atty., Julius D. Cosentino, Clayton, for plaintiff-respondent.

STEWART, Judge.

Defendant, Michael Lee Lenza, was convicted of the crime of murder in the second degree as a result of the death of his former wife, Tina Lenza. The jury fixed his punishment at life imprisonment. Defendant appeals from the judgment entered upon the jury verdict. We affirm.

Defendant presents eleven issues for our consideration. We will not consider the points in the order in the brief but will sometimes refer to them as numbered in the brief. We consider first defendant's contention that "The State failed to make a submissible case in that it was not shown that the alleged victim died as a result of the criminal agency of the appellant."

In determining this issue we view the evidence in the light most favorable to the verdict. We accept as true all of the evidence, circumstantial and direct, tending to prove defendant's guilt, together with all favorable inferences that can reasonably be drawn from that evidence and disregard all evidence and inferences to the contrary. *State v. Miceli*, 549 S.W.2d 113 (Mo.App. 1977).[1]

With these principles in mind we review the facts pertinent to this issue. The facts necessary to the determination to other issues will be related as those issues are discussed.

Tina Lenza died on Friday, December 12, 1975. Her body was found in a bathtub on the second floor of the home of her parents where she was living. The tub was full and Tina's head was under the water face up.

An autopsy revealed a dark red hemorrhage or contusion to the right side of the head in the temporal parietal area; a three inch vertical fracture to the back of the skull in the left occipital area. There were also numerous contusions on the inferior surface of the brain along the base and on the cerebellum. The fracture was most likely caused by the head striking something relatively flat while moving with a fair amount of force rather than something striking the head. The injury was consistent with the head striking a floor or the rounded surface of a bath tub. The injury would be more likely to occur if one were to fall without breaking the fall. There was no evidence that Tina had tried to break a fall. There were no bruises to her elbows, arms or hands. The contusion to the right side of the head resulted from a much less severe force than the force that caused the skull fracture.

The autopsy also revealed edema, fluid and congestion in the lower lobes of the lungs. The tracheal-bronchial tree was partially filled and contained a bloody mucous. It was the opinion of the medical examiner that the primary cause of death was drowning.

The defendant and Tina Lenza had been married and living in Columbia. They had two children, one of early school age and the other eight months of age. They returned to St. Louis prior to April of 1975 after marital problems developed. Household goods and personal items were brought to the home of Tina's parents, Robert and Beverly Wolff, and stored in the basement. Defendant had been forbidden to enter the Wolff home. When he came to pick up the children he waited on the porch. During the summer Tina went through the items that were stored in the basement and set some things belonging to defendant out on the front porch where he picked them up.

A decree dissolving the marriage of Tina and defendant had been entered on November 14, 1975. A stipulation had also been filed. Tina was granted primary custody of the children and defendant was given some temporary custody of the children. The grant of temporary custody did not include Fridays. There was no provision giving him any of the household goods.

On Friday, December 12, Tina had planned to take her step-grandfather, Kenneth Nelson, Christmas shopping. Mrs. Wolff and the Lenza children were going to the Nelson home so that Mrs. Wolff could stay with Mrs. Nelson, her invalid mother, and watch the children while Tina and Mr.

---

1. We have not been furnished with any of the exhibits.

Nelson were shopping. Mr. Nelson spoke with Tina by telephone between 10:30 and 11:00 o'clock A.M. and was advised that Tina was waiting for her mother to return home; that they would "be right down."

Mrs. Wolff had a job interview at 10:00 o'clock that morning. From the job interview she went to the home of a friend and neighbor, Mrs. Gravatt. She arrived there about 10:45 A.M. When Mrs. Wolff noticed it was 11:35 she hurried to leave because she was to pick up Tina and the children and be at the Nelson's around noon. Mrs. Wolff was in a good mood as she backed out of the driveway and headed home. The Wolff home was just a few minutes away. Mrs. Wolff was wearing her leather coat.

About 10:20 A.M. defendant called his employer stating that he was sick and would not report for work. Because of shortage of help the supervisor had one of the other employees call defendant at home to see if he could possibly come to work. Defendant's brother answered and said that defendant was not home. It was payday but defendant did not pick up his check.

Alicia, Tina's sister was living at home. She was leaving for work at 7:45 A.M. when she last saw Tina alive. Tina and Mrs. Wolff were seated at the table in the family room. Tina had thick long black hair which went below her waist. She washed her hair every two or three days. It would take her about two hours to dry her hair using an electric dryer. She had washed her hair the night before and it was done up in a bun on top of her head.

Alicia returned home for lunch at about 11:50 A.M. She parked her car in front of the house and went along side of the house to the rear. As she started up the stairs to the back porch she saw defendant inside the house. He was near the rear door rolling a barrel toward the open door. This barrel was a cardboard or fiber drum about 36″ in height and 22″ in diameter. It had a steel lid with a rim or ring that locked the lid onto the barrel. Defendant rolled the barrel out the door. When he saw Alicia he said "Hi". He struggled in lifting the barrel as if it was heavy. He then came down the steps carrying the barrel. He lost his balance but held onto the barrel and regained his balance. As he got to the bottom of the stairs Alicia went up the stairs and into the house. She went through the house looking for someone. When she got into the living room at the stairway leading to the second floor she heard the shower running. She went to the bathroom on the second floor. The bathroom door was standing open, the shower door was closed and the shower was running. She called for Tina and when there was no response she opened the shower door and saw her sister, apparently dead. Tina was nude, her hair was down covering her face, which was facing upward under the water. It was later learned that Tina was wearing earrings and had a ring on her hand. Alicia turned the water off and noticed that it was cool. She then closed the shower door and ran to a next door neighbor for help. As she was returning with the neighbor she saw defendant get into his van that was parked in the alley. The alley has only one exit and the van was faced toward the exit.

Tina's body was removed by firemen who made attempts at resuscitation. The tub was then one-half to three-quarters full of water. A wash cloth had been forced into the drain. The water was clear and the soap dish was dry.

A search of the house revealed that the glass panel in the rear door nearest the knob and lock had been broken out. The glass was found in a trash bag. The baby was asleep in the dining room in a porta-crib with the sides down. His fresh clothing was laid out on the table in the family room. The baby's diaper bag was on the couch in the living room. The leather coat that Mrs. Wolff had been wearing when she left Mrs. Gravatt was also on the couch. The light next to the chair in the family room and the television set were on and Tina's knitting was on a table next to the chair. Tina's glasses were found on the floor under the television set. A key to the apartment the Lenza's had occupied in Columbia, Missouri was also found on the floor of the family room.

The clothes Tina had been wearing in the early morning were found on the bed in her bedroom on the second floor. Her shoes, socks and underwear were found on the bathroom floor. There were some clean clothes on the hamper in the bathroom.

A search of the basement revealed that fruit jars that had been stored in the barrel that defendant carried out were stacked in the basement. None of the household goods stored in the basement had been disturbed nor were any other objects missing from the Wolff household.

The defendant was arrested in Columbia, Missouri.

Neither Mrs. Wolff nor the barrel have been seen since the date of Tina's death.

Defendant did not take the stand in his own behalf.

■ Where, as here, there are no eye witnesses and the State must rely on circumstantial evidence, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt. They must also be inconsistent with and exclude every reasonable hypotheses of his innocence. The circumstances do not have to be absolutely conclusive of guilt nor do they have to demonstrate the impossibility of innocence. The existence of other possible hypothesis is not sufficient to remove the case from the jury. *State v. Miceli,* 549 S.W.2d 113 (Mo.App.1977).

Defendant, relying primarily on *State v. Lane,* 497 S.W.2d 207 (Mo.App.1973), argues that his presence "at the scene of the crime and that he possessed the opportunity to commit the crime is not circumstantial evidence sufficient to justify a conviction."

■ Contrary to defendant's argument we find that there was sufficient circumstantial evidence to require submission of the case to the jury. We agree that mere presence at the scene is not ordinarily sufficient circumstantial evidence to warrant submission. *State v. Lane, supra.* However, in this case, defendant was present inside the Wolff home, a place that was forbidden to him. The marriage of the parties had just been dissolved; the settle-

ment left him with none of the possessions acquired during the marriage. There is evidence from which the jury could find that there was ill feeling toward the victim. The fact that the glass was broken from the door tends to show a violent and unwelcome entry. Defendant, who was not ill, advised his employer that he was sick, indicates some purpose in going to the victim's house. The circumstances surrounding the victim's death indicate a violent death that was not self-inflicted. The side of her head showed signs of having been struck by a blow to the head. Her glasses were found on the floor under the television set, a place where they would not be expected to have been placed voluntarily. She had a fracture to the back of the skull and showed no sign of attempting to break a fall indicating a force other than an accidental fall.

Tina was expected to leave the house upon the arrival of her mother. The baby's clothes were set aside preparatory to dressing him at the last minute. His diaper bag was placed on the couch where it could be taken on the way out indicating that Tina planned a hurried exit on the arrival of her mother. She would not have left the sides of the baby's crib down while showering.

The jury could find that she did not get into the tub of her own volition. Her hair was down, she had washed it the day before and it required two hours to dry. Considering her plans for the day it is highly unlikely she would wet her hair. Her finger nails were freshly painted and she was wearing earrings, neither consistent with taking a shower. The jury was warranted in finding that the wash cloth was stuffed in the drain to prevent water from escaping and the shower was running. It is not likely that one would stop the drain while taking a shower. The bathroom door was standing open, an unlikely circumstance for a person occupying a bathroom.

When defendant was seen leaving the house he was rolling the barrel. He then lifted it with some difficulty and struggled with it as he negotiated the stairs. There was obviously something of considerable

weight in the barrel. Aside from the barrel no personal items were missing from the Wolff home. There is evidence that Mrs. Wolff had entered the house 10 to 15 minutes before defendant was seen leaving with the barrel. Her car was parked at the house and the coat she had been wearing when last seen was found on the couch in the living room. The jury could find that the burden in the barrel was Mrs. Wolff. Considering the above facts with the fact that defendant fled to Columbia, Missouri, there was sufficient evidence from which a jury could find that Tina Lenza was killed by drowning by the criminal agency of defendant. See *State v. Lusk*, 452 S.W.2d 219, 222 (Mo.1970).

Defendant asserts that the court erred in giving instruction Number 7, murder in the second degree, MAI–CR 6.06 and instruction Number 9, manslaughter, MAI–CR 6.08 for the reason that the evidence did not support the submission of these instructions. As we understand defendant's point, this contention has been effectively answered under the first issue just discussed.

If it is defendant's contention by this point that the court erred in "instructing down" after giving an instruction on murder in the first degree the issue has been answered by *State v. King*, 577 S.W.2d 621 (Mo.1979) and requires no further discussion.

■ Defendant contends that it was error to admit evidence of the disappearance of Beverly Wolff because it constitutes evidence of a crime other than the crime with which he was charged. Defendant cites *State v. Shilkett*, 356 Mo. 1081, 204 S.W.2d 920, 923 (1947) for the proposition that, "Evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." In *Shilkett* the defendant shot the victim under circumstances that were susceptible of innocent

explanation of accident. The court held that it was not error to admit evidence of the belligerency of defendant and of his use of the gun on two occasions earlier in the day at places other than the place where the victim was killed. The court recognized the exception to the general rule "where the evidence of such other crimes tends to establish the absence of mistake or accident." *Id.* 204 S.W.2d 923. In the case at bar, as in *Shilkett*, it was urged by defendant in the trial court that Tina's death was accidental. The fact that defendant came out of the house heavily laden with the barrel along with the further facts that when last seen Mrs. Wolff was headed home at a time that would coincide with defendant's presence in the house, her leather coat was found on the couch, her car was parked in front of the house and that she was not seen again would tend to show that the appearance of accident was contrived and that Mrs. Wolff's disappearance would prevent discovery of the true facts.

From what we have said above the evidence was also admissible as part of a continuous occurrence intimately connected with the crime for which defendant was being tried. *State v. Garner*, 530 S.W.2d 420, 423 (Mo.App.1975).

■■ Defendant next challenges the information in lieu of indictment upon which the case went to trial. The information in question was filed before our Supreme Court had ruled *State v. Duren*, 547 S.W.2d 476 (Mo.1977). The case was tried thereafter. Before the trial began the court announced that in view of recent opinions the defendant, if found guilty as charged, would be assessed punishment in accordance with § 559.011. He referred to the charge as murder in the first degree.

The information upon which the case was tried states facts which bring it within the provisions of § 559.005, capital murder.[2] By

2. "MICHAEL LEE LENZA on the 12th day of December, 1975 did wilfully, unlawfully and feloniously, knowingly, deliberately, premeditatedly and of his malice aforethought, make an assault upon one Tina Lenza, the said Michael Lee Lenza then and there unlawfully, wilfully,

feloniously, knowingly, deliberately, premeditatedly and of his malice aforethought and with the intent to take the life of Tina Lenza, did drown the body of Tina Lenza thereby inflicting mortal injury from which Tina Lenza did die on December 12, 1975."

§ 559.009 capital murder is punishable by death. The Supreme Court in *State v. Duren, supra* held that §§ 559.005 and 559.009 were unconstitutional. It also held that an indictment or information charging capital murder was viable under § 559.011 as charging murder in the first degree and that the crime was punishable as murder in the first degree, life imprisonment, except that a person convicted under the statute would not be eligible for probation or parole for fifty years.[3] The statement of the trial court did not change the form or content of the information, it merely recognized the legal effect of *Duren.* See also *State v. Thomas,* 579 S.W.2d 145 (Mo.App.1979).

■ Defendant next complains that the court erred in permitting the State "to voir dire the jury panel on the issue of their ability to assess punishment for murder in the first degree at life imprisonment without probation or parole for fifty years *for the reason that it was not a matter with which the jury would be concerned in deciding the case.*" (emphasis added)

This issue was not presented to the trial court in the motion for new trial. The only reason given in the motion for new trial was that the comment of the State was inconsistent with Instruction No. 5. The issue now presented to us has not been preserved to our review. *State v. Blankenship,* 536 S.W.2d 520 (Mo.App.1976).

■ The next point relied on reads:
"The trial court committed prejudicial and reversible error in overruling appellant's motion to suppress evidence relating to the search of his premises at 1015 Rayburn and allowing, over appellant's objection, evidence obtained pursuant to that search to be admitted into evidence and considered by the jury."

This point fails to tell us wherein and why it is claimed the motion to suppress should have been sustained, what evidence was admitted and wherein and why it was error to admit that evidence. The point does not comply with Rule 84.04(d) and will not be considered. *Thummel v. King,* 570 S.W.2d 679, 685 (Mo.1978).

Defendant complains of the admission of testimony of Officers Higgins and Wren. The officers testified that a surveillance was placed on defendant's home after they learned of Tina's death and the disappearance of Mrs. Wolff. They observed defendant's brother, Douglas, go to the house and remove a large amount of clothing. They followed Douglas to a shopping center where he bought flashlights and a safety razor. They continued to follow Douglas until he appeared to sense that he was being followed. He took evasive action and eluded the officers.

■ We question whether defendant has preserved anything for review for the reason that the testimony of Officer Wren was received without objection and only a general objection was made to the testimony of Higgins. Defendant attacks the relevancy of the above evidence. A fact which tends to prove or disprove a fact in issue or to corroborate relevant evidence that bears on the principal issue is relevant. The question of relevancy is a matter to be determined by the trial court and if there is doubt concerning relevance the evidence should be admitted for evaluation by the trier of the facts. *State v. Sanderson,* 528 S.W.2d 527, 531 (Mo.App.1975).

■ Under the circumstances of this case the evidence was relevant because it had a tendency to show that defendant was attempting to elude the police. He did not go to his place of employment for his pay check. He also advised his employer that he was unable to work because of illness. He did not return to his living quarters, rather his brother was seen going into the

---

**3.** "If the category of capital murder or the penalty prescribed herein is declared to be unconstitutional by the Missouri supreme court or the United States Supreme Court, all killings which would be capital murder under any of the circumstances specified in section [559.005] shall be deemed to be murder in the first degree and the offender shall be punished accordingly, except that he shall not be eligible for probation or parole until he has served a minimum of fifty years of his sentence."

house where defendant lived and obtained clothing from that house. Defendant was later found in Columbia, Missouri. Flight or concealment and the facts and circumstances surrounding are relevant and admissible to show consciousness of guilt. See *State v. Cochran*, 366 S.W.2d 360, 362 (Mo. 1963). The trial court properly admitted the evidence of Officers Higgins and Wren.

 We do not consider points numbered V, VI and VII in defendant's brief. Points VI and V complain of testimony of Mr. Nelson and Mrs. Gravatt respectively as being "irrelevant, immaterial and incompetent." These are not the same as the hearsay objections presented to the trial court in the motion for new trial. An appellant may not on appeal change or broaden the assertions of error as presented to the trial court. *State v. Gilbert*, 544 S.W.2d 595, 598 (Mo.App.1976). Further these points constitute mere general objections and are not sufficient to preserve alleged error for review. *State v. Morrow*, 541 S.W.2d 738, 741 (Mo.App.1976).

In point VII defendant complains of the admission of the testimony of Sgt. Langford concerning tests made with respect to drainage of the water in the tub because the evidence was "irrelevant, immaterial and incompetent." This is not the grounds stated in the motion for new trial and will not be reviewed for the same reason stated above. *State v. Blankenship, supra.* This point is also defective under *Morrow, supra.*

The defendant complains that the trial court erred in giving instruction Number 12 with respect to circumstantial evidence and in refusing instruction A offered by defendant on the same subject.

Instruction Number 12 given by the court is MAI–CR 3.42 which reads:

"Circumstantial evidence is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you, together with all the other evidence in the case in arriving at your verdict.

"You should not find the defendant guilty unless the facts and circumstances proved are consistent with each other and the guilt of the defendant, and inconsistent with any reasonable theory of his innocence."

Instruction A offered by defendant is MAI–CR 3.42 modified. The modification is found in the second paragraph of MAI–CR 3.42. With emphasis added to the additions made to the approved instruction, the paragraph reads as follows:

"You should not find the defendant guilty unless the facts and circumstances proved are consistent with each other *and with the hypothesis that the defendant is guilty, and inconsistent with any theory of his innocence and with every reasonable hypothesis except his guilt.*"

It is contended that MAI–CR 3.42 is a misstatement of the law which is correctly stated in defendant's offered instruction A. Defendant relies on *State v. Oliver*, 520 S.W.2d 99 (Mo.App.1975). Oliver was tried before the effective date of MAI–CR and is not applicable. Defendant presents an intriguing argument on the issue, however, it is not the prerogative of this court or of the trial court to make the determination sought by defendant. Rule 20.02(c) provides:

"Whenever there is an MAI–CR instruction or verdict form applicable under the law to the facts, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other on the same subject."

 The failure to give the MAI–CR instruction applicable to the case constitutes error on the part of the trial court. Rule 20.02(e), *State v. Dodson*, 556 S.W.2d 938, 951 (Mo.App.1977). The trial court was required to give instruction Number 12 to the exclusion of instruction A and we may not convict the trial court of error in giving an instruction that it is required to give.

We have carefully reviewed the transcript of the trial and of the motion to suppress and the record as required by Rule 28.02 and find no prejudicial error.

The judgment of the trial court is affirmed.

STEPHAN, P. J., and KELLY, J., concur.